ANNA L. SEXTON, Appellee, *vs.* THE MERCHANTS' LOAN AND TRUST COMPANY *et al.*—(JOHN M. L. SEXTON, Appellant.)

*Opinion filed February 20, 1913.*

1. DEEDS—*delivery is essential to the validity and operation of a deed.* Delivery is essential to the validity and operation of a deed, and it is essential to delivery that the grantor shall have absolutely parted with all dominion and control over the instrument.

2. SAME—*grantor's knowledge of what is necessary to a delivery of deed is not material.* In determining whether a deed was well delivered, the question is not whether the grantor knew that he must surrender dominion and control over the deed, but whether he did actually surrender such dominion and control.

3. SAME—*what does not constitute delivery of deeds.* The fact that the grantor, when leaving for a journey, handed to a friend a sealed package of miscellaneous papers, including the grantor's will and several deeds, without any instructions to the friend or any knowledge upon his part as to the contents of the package, which he returned to the grantor, unopened, upon the latter's return from the journey, does not constitute a delivery of the deeds, notwithstanding the grantor wrote on the outside of the package that it was to be opened only on his death, and that nothing contained therein belonged to his estate but was the property of the friend, "who understands my wishes."

APPEAL from the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding.

HUBERT E. PAGE, and WILLARD C. McNITT, (HOLLETT, SAUTER & HENKEL, of counsel,) for appellant.

MUSGRAVE, OPPENHEIM & LEE, for appellee.

McCULLOCH & McCULLOCH, for the Merchants' Loan and Trust Company.

P. E. O'NEIL, for the guardian and guardian *ad litem* of Patrick Joseph Sexton.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This appeal is from a decree for the assignment of dower in certain real estate in Cook county to the appellee, Anna L. Sexton, and the only question necessary to be decided is whether the deed from Patrick J. Sexton to the appellant, under which the latter claims title to such real estate, was ever delivered.

Patrick J. Sexton in his lifetime owned the premises, which were known as No. 1340 Michigan avenue, having purchased them in 1884 and occupied them as his family residence until his death, on October 28, 1903. He left a large amount of real and personal property, which he disposed of by his will executed on June 26, 1902, in which he devised and bequeathed to his wife, the appellee, such interest in his estate as she might be entitled to under the laws of the State of Illinois. The appellant, John M. L. Sexton, is a brother of Patrick J. Sexton, and claims to be the owner of the premises by virtue of a warranty deed conveying them to him for an expressed consideration of $33,000, executed by Patrick J. Sexton and his wife, the appellee, dated August 25, 1885, but not delivered until August 8, 1903, when the appellant claims it was delivered by Patrick J. Sexton to Rev. Hugh P. Smyth for the use and benefit of the appellant. There is no dispute in the testimony. The only question is whether the delivery of the package containing the deed to Father Smyth was a sufficient delivery to vest the title in the grantee.

On August 8, 1903, Patrick J. Sexton left Chicago for a trip abroad. He told the Rev. Hugh P. Smyth, who was a clergyman living in Evanston and a relative of Sexton and had been intimate with him and the Sexton family for many years, that he wanted to see him before leaving.

Father Smyth answered that he would be at the train to see Sexton off, and went there ten or fifteen minutes before train time. Sexton there handed him a package folded in brown paper, sealed with sealing wax, and having these words written on the wrapper, in Sexton's handwriting: "Rev. Hugh Smyth, Evanston.—This package to be opened only on the death of Patrick J. Sexton. Nothing contained herein are part of the estate of Patrick J. Sexton. They are the property of Fr. Smyth, who understands my wishes." Smyth had been told nothing about the package or its contents. A day or two before, Sexton had brought a package of papers, with rubber bands around it, to his secretary, and asked him to put some heavy paper around it and seal it. This was done. Sexton wrote the above endorsement on the wrapper, and this was the package he handed to Smyth. Sexton, when handing Smyth the package, said: "This is yours; I will write you from the other side," but did not disclose the contents of the package. Smyth took the package home with him and put it in his safe, where it remained until Sexton's return, when Smyth took it to Sexton's house and handed it back to him. After Sexton's death Mrs. Sexton gave it to his secretary, Mr. Jacobs, telling him that Sexton said she should hand it to him and he would know what to do with it. Sexton had told him nothing about the package and he gave it to Smyth, who opened it and found it to contain Sexton's will, the deed in question, various other deeds, notes payable to Sexton, trust deeds, canceled notes of Sexton, certificates of stock, letters written to and by Sexton, statements of account, and other documents whose contents are not shown. The will was at once delivered to the Merchants' Loan and Trust Company, which was named as executor and trustee, and was probated, and the other papers were retained by Smyth, who afterwards delivered the deed in controversy to the Merchants' Loan and Trust Company by the direction of the probate court. The

appellant knew nothing of the deed until after his brother's death, and,. learning of its existence, demanded it first of Smyth while it was in his possession and afterwards of the Merchants' Loan and Trust Company to which it had been delivered, but his demands were refused.

Delivery is essential to the validity and operation of a deed, and it is essential to delivery that the grantor shall have absolutely parted with all dominion and control over the instrument. These propositions have been declared in many cases, and the question for decision here is whether the grantor, when he delivered the package to Smyth, clearly manifested an intention then to part absolutely with all dominion and control over the deed and to convey the estate to the grantee. Numerous cases have been cited by counsel in which, under varying circumstances, deeds have been held to have been delivered or not to have been delivered, but they are of little assistance, for no two sets of circumstances are alike. No new or doubtful rule of law is involved but the question is one of fact. What Sexton's intentions were in regard to the package which he left with Smyth is only matter of conjecture. Certainly it cannot be said that the mere act of placing the package in Smyth's hands clearly indicated an intention to part with all control over the package and its contents. He said to Smyth, "This is yours," but nobody claims that he thereby gave the package and its contents to Smyth as the latter's property. He merely entrusted the package to him. The giving of this bundle of miscellaneous papers with only the oral statement shown to have been made could not be regarded as a delivery of the deed, for there were no instructions, express or implied, to deliver it to the grantee at any time. The endorsement does not make the intention clearer. It is clear, for it is expressly stated, that the package was to be opened only after Sexton's death. It is stated that the contents were no part of the estate of Patrick J. Sexton but were the property of Father Smyth.

The contents were such that they could not become the property of Smyth, and they could not become the property of anyone else except upon some direction of Sexton. The will could not become the property of anyone. It was in the same situation as the rest of the package. If Sexton had no control of the other contents he had no control of the will. Father Smyth did not understand Sexton's wishes, had no knowledge of the contents of the package or what Sexton wanted done with them, and had in no way been informed or consulted about the matter. It seems reasonably certain, from the evidence, that Sexton, in making preparations for his trip abroad, intended to leave his will and some papers with Father Smyth with instructions; that he collected the papers together, and, from the useless character of a part of the collection, did so with some haste or lack of care; that he made the endorsement on the wrapper and intended to inform Father Smyth of his wishes, but for some reason, perhaps lack of time or opportunity, failed to do so. He failed to write during the few weeks of his absence and on his return the package was brought back to him. What was done then or afterward is not material, for the deed was either delivered on August 8, 1903, or not at all. The date of the deed is August 25, 1885,—less than a year after Sexton acquired title to the property. The date of the will is June 26, 1902. By it the testator devises to each of his three sisters real estate in Chicago and cancels all of his brother's debt to him, amounting to more than $50,000. No explanation appears as to why this deed was made or where it was during these eighteen years. There is evidence that Sexton said in the spring of 1903 that he intended to let John have his Michigan avenue property. Whatever may have been his statements in that respect, they throw no light on the question whether he actually did deliver the deed.

The court refused to admit evidence of a memorandum made by the testator while listening to the argument of a cause to which he was a party, involving the question of what is essential to the delivery of a deed, and it is insisted that this was error, because it would have appeared that the testator knew what was necessary to make a good delivery. It was not error, however, for the question was not as to the testator's knowledge but as to his acts; not whether he knew that it was essential to a delivery that he should surrender dominion and control over the deed, but whether he actually did surrender such dominion and control.

The package contained deeds from the testator to his sisters of certain real estate devised to them by his will, and other deeds connected with the title to such real estate, and notes of .the appellant for the principal sum of $50,000, which were by the will devised to the appellant. If the will should remain unrevoked, these documents, in carrying out the will, would naturally go, as a part of the testator's estate, to the persons to whom the will devised the property. The testator had the power to change the will, to revoke it, and make an entirely different disposition of his property at any time. How can it be said, then, that the contents of the package were placed beyond his dominion and control? If he retained control of a part of the package he retained control of all its contents. He did not make his wishes known to Father Smyth but only left the package in his custody, to be opened after his death. He might ask for its return at any time for the purpose of making a different disposition of his estate, or for any reason he thought proper, or for no reason.

The superior court did not err in finding that there was no delivery of the deed.

*Decree affirmed.*