Argued October 7; modified December 9, 1930; rehearing denied
March 3, 1931

# NALLEY *v.* FIRST NATIONAL BANK OF
# MEDFORD ET AL.

(293 P. 721, 296 P. 61)

410

*Charles W. Reames,* of Medford, and *E. M. Page,* of Salem, for appellant P. K. Nalley.

*Harry C. Skyrman,* of Medford, for appellant Anna C. Nalley.

*Porter J. Neff,* of Medford, for respondents.

■ KELLY, J. During the course of the trial, a partial transcript of testimony taken by W. J. Looker, at the instance of the attorney for Mr. Pointer, in a proceeding in the county court, was received in evidence over the objection of plaintiff and appellant. This proceeding had been instituted by defendant and appellant Anna C. Nalley for the purpose of having her father William A. Pointer declared to be an incompetent and having a guardian appointed for him. Mr. Looker, the

stenographer who took the testimony, though doubtless most proficient, was not appointed by the court for that purpose and was in no sense an official court reporter. Moreover, the proper foundation was not laid for the use of his notes to refresh his memory while testifying. This partial transcript of testimony should not have been received in evidence. Our view of the record, however, renders its admission harmless.

It is contended by respondents that there was no delivery by Pointer to the Nalleys of the instrument dated February 11, 1928. Upon that question, Mr. Nalley testified, directly and positively, to the effect that such delivery was made. As to the actual passing of the instrument from the hands of Mr. Pointer to those of the appellant Mr. Nalley, he, Mr. Nalley, is corroborated by Mr. Phipps. The instrument itself was taken to the bank. The testimony of the officials of the bank was negative. The conservatism which properly actuates good bankers, when contemplating the uncertainty which attends litigation, caused these officers, when apprised of the imminence of this litigation, to decline to surrender the documents involved until so directed by a court having jurisdiction of the controversy.

■ The statement of Mr. Pointer in his last will, to the effect that he retained possession of the instrument in question, if given the effect of a denial that he delivered the same to Nalley, when considered in the light of his advanced age and his vacillating course, is not sufficient to counterbalance the probative value of the direct testimony of Mr. Nalley and Mr. Phipps.

It is also contended that the instrument is testamentary in character, and therefore superseded by the

last will and testament which has been admitted to probate. This contention is based upon the following clause in the instrument:

"The foregoing provisions of this conveyance, however, shall not go into effect or be in force until after my death, nor shall this instrument be recorded before my death, and I do hereby authorize and direct the said grantees, Anna C. Nalley and Peter K. Nalley, immediately after my death shall occur, to pay out of the funds hereby conveyed, or out of other moneys of my estate, the sum of one thousand ($1,000.00) dollars unto J. C. Cass and his wife, or the survivor thereof, the sum of $1,000.00 being in consideration of the kindly services rendered unto me and unto my deceased wife in time of trouble and need of such sympathetic services, and I do hereby expressly authorize and direct the payment of $1,000.00 therefor, to be so paid by the said grantees after my death as aforesaid."

■ We are called upon to determine the effect of the statement in the instrument in question that "the foregoing provisions of this conveyance, however, shall not go into effect or be in force until after my death." We construe it to constitute a reservation of a life estate in the grantor and not to be testamentary in its nature.

■ In this case the subject of the transfer is personal property. A remainder in personal property properly may be created by deed: *Allen v. Hendrick,* 104 Or. 224 (206 P. 733) ; 18 C. J. 306, § 286, note 52.

The respondents cite the case of *Sappingfield v. King,* 49 Or. 102 (89 P. 142, 90 P. 150, 8 L. R. A. (N. S.) 1066), to the effect that language similar to that employed in the case here limiting the taking effect of a deed conveys no present interest, but renders the instrument testamentary and therefore revocable. An examination of the authorities at the present time convinces the writer of this opinion that the weight of authority is

not now in harmony with the statement of that phase of the law which is set forth in the Oregon case just mentioned. Most, if not all, of the American authorities on the subject are collated in a note to be found in 11 A. L. R. at page 69 et seq. and at page 92 et seq. The following are subsequent cases upon the subjects: *Watts v. Lawrence,* 26 Wyo. 367 (185 P. 719; 188 P. 34); *Pelt v. Dockery,* 176 Ark. 418 (3 S. W. (2d) 62); *North v. North,* (Tex. Civ. App.), 2 S. W. (2d) 481; *Willis v. Fiveash,* 297 S. W. 509 (reversed on other grounds 1 S. W. (2d) 585); *Turner v. Montgomery,* 293 S. W. 815; *Nobell v. Town of Beaver,* 133 Okl. 247 (271 P. 420).

The courts of Arkansas, California, Indiana, Kentucky, Kansas, Maine, West Virginia, South Carolina, South Dakota, Wyoming, and Wisconsin construe instruments containing similar restrictions as deeds. In Alabama, Georgia, Pennsylvania, Mississipi, Missouri, Illinois, Iowa and Texas, the decisions are conflicting.

The courts of Oklahoma, Nevada and Michigan hold that instruments with similar restrictive clauses convey no present interest and are testamentary.

While in the case of *Sappingfield v. King,* supra, the restrictive language is similar to that employed in the instrument now under consideration, it is not the same. In *Sappingfield v. King,* the instrument construed to be testamentary in its nature, contains this clause:

"This deed is made with the full understanding and upon the condition that the same shall take effect from and after the death of the grantor."

In the case at bar, the restrictive clause relates only to "the foregoing provisions" of the conveyance. The habendum clause follows; and cannot properly be

construed to have been rendered entirely nugatory by the restrictive clause if any other reasonable construction can be given to the instrument.

As stated, Anna C. Nalley seeks reformation of that certain instrument executed by her in March, 1928. The testimony on that phase of the case is not of such clear and convincing nature as to justify a decree of reformation. ·

■ As was well said upon oral argument in this court by counsel for appellant Anna C. Nalley, this is a question of fact and involves a consideration of the testimony upon that point.

Concerning the execution of the instrument in question, Anna C. Nalley testified as follows:

"Q. Tell the court how you happened to make that instrument and what the intent was at the time that instrument was made.

"A. Well, often in making loans there would be two or three thousand short, two or three hundred or two or three thousand and there would be one hundred or such a matter, and I would just go and get the money out of my pocketbook and turn in on it and thought nothing at all about it, and when the interest was due father got the interest. I didn't say anything about it at all.

"Q. Did you — go ahead.

"A. One day father came in the house after mother's death (he was living with me), and he said to me: 'Anna would you mind giving me the life estate in all my property?' I said, 'I certainly wouldn't.' He said: 'Well, then how much is it?' and I told him it was $1900. He said: 'All right, I will just give you Gus Godette's loan, which is $2,000.' I said: 'All right.' He said: 'That isn't counting the interest or anything, but I just feel I want the control of it through my lifetime.' He said: 'It is yours anyway.' I said: 'It is perfectly all right with me.' So, he said, 'The next time you go down

town'—which I didn't go down town very often,—'you stop in at Mr. Phipps' office and sign the agreement.'

&ast; &ast; &ast; &ast; &ast;

"Q. And what was the understanding at the time that instrument was signed, or what did you intend to convey?

"A. To convey the difference that I had in those loans.

"Q. You never intended at that time to convey over all your right in that property? A. I should say not.

"Q. Do you know whether Mr. Pointer intended that at the time?

"A. Well, he didn't talk that way."

With reference to the same matter Mr. W. E. Phipps testified thus:

"Q. Tell what he (referring to Mr. William A. Pointer) said he wanted done.

"A. Well he said that he had demanded of Mrs. Nalley that she convey back this property to him. He said that she had an interest in a lot and also that her name appeared in those loans and that the reason of that was that she had supplied some of the money to make up the loans and that he had left these loans to her and that she was to convey all of the property to him &ast; &ast; &ast;

"Q. Well, Mr. Phipps, was anything said there at the time by Mr. Pointer that he wanted all of her right, title and interest in that property turned back to him. A. No.

"Q. What right did he want? A. He wanted the right of the property that was claimed by her by virtue of the amounts of money she had put in these loans.

"Q. Approximately how much money was that? A. As I recall, some $1,800 or $2,000.

&ast; &ast; &ast; &ast; &ast;

"Q. He knew at that time also that he had property, taking into consideration whether Mr. Nalley or Mrs. Nalley, or Mr. Pointer owned it, aggregating nearly $20,000. A. Yes. If the court will pardon me—

I did dictate the paper and it was written out and I really thought it was broader than the intentions of the parties was.''

As against this showing, we have the subsequent declaration of appellant Anna C. Nalley in a petition for a guardian for her father ''that the said William A. Pointer has an estate situated and being in said county and state consisting of personal property to-wit: Cash and real estate, mortgages and securities of the value of $20,000.''

This apparent inconsistency in the position now assumed by appellant Anna C. Nalley with that which she assumed in the guardianship proceeding materially weakens the unsatisfactory showing reflected in the above quoted excerpts of testimony.

It follows that the decree of the lower court should be and is hereby modified in that instead of declaring that defendant and respondent D. E. Harder, as executor of the estate of William A. Pointer, deceased, is the owner of all the property described in exhibit A of plaintiff's complaint, and that said plaintiff and appellant has no interest in or to said property, it should be and is hereby ordered, adjudged and decreed that plaintiff and appellant P. K. Nalley is the owner of an undivided one-half of said property and that the defendant and respondent B. E. Harder, as executor aforesaid, is the owner of the remaining undivided one-half thereof, and, except as hereby modified, the decree of the lower court is affirmed. Appellant P. K. Nalley to recover of and from respondent Harder, as executor, his costs and disbursements here and in the lower court.

COSHOW, C. J., RAND AND ROSSMAN, JJ., concur.

Petition for rehearing denied March 3, 1931

ON PETITION FOR REHEARING

(296 P. 61)

KELLY, J. The petition for rehearing, as we construe it, presents the contention that in our original consideration of this case we did not bear in mind the events occurring after the execution of the instrument dated February 11, 1928, and conveying the property in controversy to P. K. and Anna C. Nalley. For convenience, we will refer to this instrument as exhibit A.

The suggestion is also made that we should have referred to the conversation between Mr. Pointer and Mr. Phipps just before the delivery of exhibit A.

We cannot believe that the petitioners challenge the truth of the statement that the instrument dated December, 1927, purporting to convey the property in controversy to Anna C. Nalley, was not delivered. As we construe petitioners' position in that regard, it is that, because this instrument was not delivered, we should have held that exhibit A was not delivered.

■ We find no protest by petitioners against our holding with respect to the validity of the instrument executed in March, 1928, by Anna C. Nalley conveying her interest in said property to Mr. Pointer. As to the property in controversy, this instrument was entirely unnecessary and futile if there had been no delivery of exhibit A. To the extent of its validity as a transfer of an interest in the property described in exhibit A, it is a practical construction by Pointer of exhibit A to the effect that exhibit A had been delivered and title in the property had passed to the Nalleys.

The events to which the petition calls our attention are:

1st. Nalley's failure to take action, after knowledge of the execution of a will by Pointer, to prevent the provisions of the will from becoming effective.

2d. Nalley's relation to the proceedings instituted for the appointment of a guardian for Pointer and Nalley's testimony therein.

3d. The possession by Pointer at his death of a receipt, bearing date of December 14, 1927, for an escrow package placed in the bank.

4th. The refusal of defendant, Harder, also an officer in the bank, to deliver to Pointer the papers in escrow.

■ We will first present the testimony of Mr. Phipps as to what occurred just before and when exhibit A was prepared by him. (Transcript of Testimony, pp. 105 and 106)

"Q. Now do you recall an instance of Mr. Pointer coming to your office later on and wanting another instrument drawn, giving half to Mrs. Nalley and half to Mr. Nalley? A. Yes sir.

"Q. Just relate to the court what were the circumstances of that case?

"A. He came up one morning and said that he wanted to make a new conveyance, in which he was intending to convey one-half of the property to Mr. Nalley, and one-half of the property to Mrs. Nalley, and still reserve $1,000.00 to Mr. Cass.

"Q. Was such an instrument drawn? A. It was.

"Q. Is that the true and correct instrument attached to the complaint in this case and made a part of it? A. It is.

"Q. Did you have any conversation with him about what should be done with the instrument passing present title or anything in that regard?

"A. That was his intention and my understanding of what he said.

"Objection. * * *

"The Court: State what was said about it.

&ast;  &ast;  &ast;  &ast;  &ast;

"A. He said: 'I want to convey my property to Mr. and Mrs. Nalley.' And he said: 'I expect there will be

enough interest from the transactions to keep me during my lifetime; but,' he said: 'I don't want to turn it over to them until after my death.'

"Q. Do you know whether or not there was any—what was his intent at that time, or did you give him any instructions at that time as to what he must do with the instrument to convey the property the way he desired to?

"A. Yes. I told him he should either deliver it to Mr. Nalley or Mrs. Nalley, and then I further suggested that he deposit it in the bank, in his bank box or turn it over to the bank, the cashier or an officer of the bank, one or the other.

"Q. Now did you leave your office with Mr. Pointer.

"A. Yes, I did.

"Q. And did you at the time meet Mr. Nalley? A. Yes sir.

"Q. Where did you meet him?

"A. I went out with Mr. Pointer into the hall and was going to show him down the stairs and when we got to the back head of the stairs we met Mr. Nalley coming up for Mr. Pointer.

"Q. Was any conversation had there between Mr. Nalley and Mrs. Nalley and Mr. Pointer at that time when you were present?

"A. I didn't hear anything but I saw Mr. Pointer hand this conveyance over to Mr. Nalley.

"Q. How long would you say that was after you had instructed Mr. Pointer to pass his present interest it must be delivered.

"A. I think five or six minutes."

Taken in its entirety, this testimony is corroborative of Mr. Nalley's claim that exhibit A was delivered by Pointer to Nalley.

■ We have stated above that we cannot believe that petitioners challenge the truth of the statement as to the nondelivery of the instrument dated December, 1927, purporting to transfer the property in contro-

versy to Anna C. Nalley. Our reason for this is that in plaintiff's first brief, at page 7, we find this statement:

"In December, 1927, while Mr. and Mrs. Nalley were husband and wife, Pointer made a conveyance of the property here in controversy unto Mrs. Nalley. This conveyance was never delivered."

In the first brief of defendant, Anna C. Nalley, at page 4 thereof, we find this statement:

"Plaintiff has made a very complete statement of the case. It is not necessary to repeat the same herein. We adopt it as the statement of this appellant with exception that the same should be more definite as to the execution of the transfer from this appellant to Pointer."

The excerpts from the briefs just quoted disclose a formal admission of nondelivery by the grantee named therein. Another reason for so holding is that the only testimony in the record on the subject discloses that there was no delivery thereof.

We are, however, utterly unable to adopt petitioners' reasoning, to the effect, that, inasmuch as there was no delivery of this instrument, we must hold that there was no delivery of exhibit A.

Four months and nineteen days after the execution of exhibit A Pointer made a will containing a bequest of one-third of his estate to plaintiff, one-third to Anna C. Nalley, and one-third to defendants Cass.

In the meantime, divorce proceedings had been instituted and a divorce granted between the Nalleys, and Pointer had taken up his abode with the defendants Cass. Petitioners criticize plaintiff for saying that he was named in that will and not taking steps to prevent the provisions of the will from becoming

effective. Usually a will is not contested until the testator's death. Mr. Nalley, in explaining the reason for his attitude about the matter, said:

"Because I knew that Mr. Pointer had conveyed this property to us and it didn't make any difference how many wills he made. I didn't think it made any difference so I let Mr. Pointer have his way. He was old and childish." Transcript of Testimony, p. 242, (misnumbered 342.)

Petitioners call attention to plaintiff's testimony as to the value of the Pointer property. As we read it, plaintiff stated its value. He was not called upon to state whether or not he had or claimed an interest in it. The testimony referred to is as follows:

"Q. Do you know how much Pointer's estate amounts to at this time—how much he has got?

"A. I can tell you in a minute. (Witness examines a memorandum book.)

"Q. Aside from interest that you have collected?

"A. Mr. Pointer has got one thousand dollars in a note on the Cook loan and then he drawed out seven hundred and some odd dollars, and it leaves a balance of about seventeen thousand and seven hundred dollars.

"Q. Did you so testify.

"A. Yes sir, that is what was in the bank." (Transcript of Testimony, p. 66.)

As to the proceedings instituted to have a guardian appointed for her father, the petitioners say we resort to a technicality when we say that these proceedings were instituted by Anna C. Nalley. In any event, it is true that these proceedings were instituted by her. Plaintiff's relation to those proceedings as a witness therein cannot be considered as ground for estoppel. The manifest object of the proceedings was to protect Pointer from the allegedly undue influence of the defendants Cass.

In arriving at our original decision, we gave careful consideration to the record with reference to the guardianship proceedings, and Mrs. Nalley's institution thereof was a strong circumstance influencing us to hold that Mrs. Nalley's transfer of her interest in the property, described in exhibit A, was not invalid.

There is evidence of the receipt, mentioned above, from the bank being in the possession of Pointer and found among his personal effects. The officers of the bank were not able to account for the failure to note any change in the escrow agreement at the time exhibit A was placed in the bank. The cashier identified the receipt in question as one issued December 14, 1927, when the conveyance by Pointer to Mrs. Nalley was placed in the bank. The testimony discloses that a deed to some real property from Mrs. Nalley to Pointer was also deposited in the bank and kept in the package for which the receipt was given. The cashier of the bank testified that later Mr. Phipps withdrew the conveyance of personal property from the bank and then stated that Mr. Pointer had changed his mind and that they desired to make a change. (Transcript of Testimony, p. 162.)

In our original opinion, we said that the testimony of the officers of the bank is negative. Here is an excerpt of the testimony of the cashier as to what occurred when the bank received exhibit A:

"Q. Can you tell us definitely who was there and did the talking at the time the second conveyance was placed there? A. No sir, I can't.

"Q. You can't say that you talked to Mr. Pointer or that he gave you any instructions when they came back?

"A. There wasn't any instructions given when they were brought back. The same instructions stood as before.

"Q. How could you use the same instructions with the second instrument? A. Because they didn't change them.

"Q. Well they didn't tell you anything at all you claim at the time of this deposit—they didn't tell you as you remember they didn't tell you anything.

"A. I don't recall, I won't say they didn't tell me. I say I don't recall that there was any given to me." (Transcript of Testimony, p. 168.)

We still are of the opinion that upon the question of the delivery by Pointer to Nalley of exhibit A the testimony of the bankers is negative. Moreover, there is nothing in the circumstances that Pointer had a receipt from the bank issued when paper belonging to him, that is the deed from his daughter and the purported conveyance of personal property from him to his daughter were in the bank, to indicate nondelivery of exhibit A, or to rescind, cancel, revoke or annul it.

■ Just why petitioners deem it important to mention the refusal of one of them, defendant Harder, to deliver to Pointer papers on deposit in the bank of which defendant Harder is president, as a circumstance at variance with plaintiff's rights herein, is not clear.

Defendant Harder testifies that he thought that Pointer was demanding the contents of a safety deposit box in which Nalley and Pointer were jointly interested, and for that reason declined Pointer's request. If this discloses anything, it is that the president of the bank did not know where the documents in which these parties were interested had been placed. The cashier had received exhibit A without making any record whatever of the terms and conditions under which it was placed in the bank's keeping. The president of the bank was restricted to the records of the

bank, and such information as the cashier could give him, to ascertain what those terms and conditions were. At most, the circumstances of the demand by Pointer for the papers, if we assume that the papers here referred to included exhibit A, could be construed only as a denial by Pointer that he had delivered exhibit A. In the original opinion, we say:

"The statement of Mr. Pointer in his last will to the effect that he retained possession of the instrument in question, if given the effect of a denial that he delivered the same to Nalley, when considered in the light of his advanced age and his vacillating course, is not sufficient to counterbalance the probative value of the direct testimony of Mr. Nalley and Mr. Phipps."

Conceding that he demanded exhibit A from the bank, we think that such a course on Mr. Pointer's part does not counterbalance the effect of the direct testimony above mentioned.

We come now to the question submitted in petitioners' addenda to their brief, that is, whether Mr. Nalley should be required to contribute, from the portion of the property transferred to him by Pointer, any part of the $1,000 mentioned in the following clause of exhibit A:

"* * * and I do hereby authorize and direct the said grantees, Anna C. Nalley and Peter K. Nalley, immediately after my death shall occur, to pay out of the funds hereby conveyed, or out of other moneys of my estate the sum of one thousand ($1,000) dollars unto J. C. Cass and his wife or the survivor thereof, said sum of $1,000 being in consideration of the kindly services rendered unto me and unto my deceased wife in time of trouble and need of such sympathetic services, and I do hereby expressly authorize and direct the payment of $1,000 therefor, to be so paid by the said grantees after my death as aforesaid."

The transfer by Anna C. Nalley in March, 1928, of all her interest in the above granted property extinguished any obligation on her part to contribute to the payment of said $1,000. If the claim for the services mentioned is still an existing claim, under the terms of exhibit A as above quoted it may be paid from other moneys of the Pointer estate than those mentioned; hence, Nalley should not be required to contribute from the share transferred to him by exhibit A, if there are other moneys of the estate sufficient to pay the claim, and in no event should he be required to contribute more than one-half of such claim. Moreover, opportunity should be afforded for the interposition of any defense, if any there be, which the facts will warrant. No such opportunity has been afforded in this record.

Petition for rehearing denied.