Argued October 8, 1930; affirmed January 13, 1931

## COLE *v.* REEVES ET AL.
### (294 P. 1099)

*James L. Conley* and *F. S. Senn,* both of Portland (Senn & Recken and James L. Conley, all of Portland, on the brief), for appellant.

*A. E. Clark,* of Portland (Clark & Clark, of Portland, on the brief) for respondent Cole.

*Earl C. Bronaugh,* of Portland (Bronaugh & Bronaugh and David E. Lofgren, all of Portland, on the brief) for respondents Lumbermen's Trust Co. and Columbia Conference.

RAND, J. The defendant, George F. Reeves, on August 21, 1926, entered into a contract with the Columbia Conference of the Evangelical Lutheran

Augustana Synod of North America, hereinafter referred to as the Columbia Conference, by the terms of which he undertook to construct and complete a hospital building at Astoria for the stipulated price of $101,230. Article IX of said contract provides:

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be one hundred one thousand, two hundred thirty ¦dollars ($101,230) subject to additions and deductions as provided herein and as provided in the contract specifications, and that such sum shall be paid by the owner to the contractor, in current funds and only upon certificates of the architect as follows: Eighty-five (85) per cent of the estimated value of all material and labor actually done in the building, on or before the 10th day of each and every month as the work progresses.

"The final payment shall be made within thirty-five days after the completion and acceptance of such building and the issuance of the certificate of completion by the architect, of the work included in this contract, and all payments shall be due when certificates for the same are issued.

"If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify it against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all money that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

Pursuant to such contract, Reeves, as principal, and the Metropolitan Casualty Insurance Company of New York, hereinafter referred to as the surety com-

pany, as surety, executed and delivered to the Columbia Conference a bond in the sum of $55,615, conditioned that:

"* * * if the principal shall faithfully perform the contract on his part, and satisfy all claims, and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

In order to provide itself with funds for the payment of the contractor, the Columbia Conference, on October 1, 1926, executed and delivered to the defendant Lumbermen's Trust Company, hereinafter referred to as the trust company, as trustee, a mortgage in the form of a trust deed to secure a bond issue aggregating the sum of $85,000. In and by said trust deed, it was provided that the proceeds accruing from the sale of the bonds should be deposited with the trust company and be applied toward the payment of the construction cost of the hospital building. The trust deed also provided that the trust company "shall withhold fifteen per cent (15%) of the amount accruing to each contractor, sub-contractor and/or materialman until such party shall have fulfilled his contract with respect to the construction of said building and the time for filing liens upon said building shall have expired."

The defendant Reeves also was without sufficient funds to enable him to perform the contract upon his part and in order to obtain such funds, he entered into

an agreement with the Astoria National Bank, hereinafter referred to as the bank, to assign to it the moneys which would become payable to him under his contract in consideration of the bank's advancing to him the moneys necessary for his performance of the contract. In compliance with said understanding he made a written assignment on or about October 23, 1926, of his claim against the Columbia Conference for the sum of $8,000. This assignment was not satisfactory to the bank and on that date the bank wrote to the trust company a letter, requesting a more definite assurance that the moneys earned under the contract would be paid to the bank. In reply to said letter, the trust company wrote to the bank as follows:

"We acknowledge receipt of your letter of October 23rd, in connection with the Astoria Hospital. Mr. Lofgren, Attorney representing the Conference, today received a telephone message from Mr. Reeves, requesting that you be furnished with a more definite assurance on the part of the Conference and ourselves, as to knowledge of his assignment to you of monies which may become payable to him under his contract on the above hospital. We have drafted a letter addressed to ourselves, and the conference, and are enclosing herewith three copies. If you will have Mr. Reeves sign these three copies, and have them executed by the surety company, and return to us, we will then execute on our part. After execution, one copy will be returned to you, leaving one copy for the conference and one copy for ourselves.

"We trust that this will definitely clear up any misunderstanding as regards Mr. Reeves' assignment to you under his contract."

On November 4, 1926, the trust company again wrote to the bank as follows:

"We are enclosing herewith a duly executed copy of instructions from George F. Reeves, regarding

assignment of certain monies which may become payable to him in connection with the construction of the Columbia Hospital, at Astoria, Oregon.''

The instructions referred to in the last letter and which were enclosed therein to the bank read as follows:

''Portland, Ore., October 23, 1926.

''Lumbermen's Trust Company, Trustee,
Columbia Conference of the Lutheran Augustana Synod, Portland, Oregon.

''Gentlemen: You are hereby notified that the undersigned has assigned all of his interest in the proceeds of any Architect Certificates or other funds which may become payable to him in connection with the construction of the Columbia Hospital at Astoria, Oregon, to the Astoria National Bank.

''This letter is your authority to pay any monies which may become due to me under my contract with the Columbia Conference of the Lutheran Augustana Synod to said Astoria National Bank, and you are further ordered not to pay any money to the undersigned under the above-mentioned contract until so ordered by the Astoria National Bank. Very truly yours,
GEO. F. REEVES.

''The foregoing assignment has been approved by the Metropolitan Casualty Insurance Company of New York, Sureties on the Construction Bond of George F. Reeves.

''THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK,
By Fred A. Schlick,
(Corporate Seal)          Attorney in fact.

''The above instructions are accepted.
Lumbermen's Trust Company,
S. Fagan, A. T. O.
By Columbia Conference of the Lutheran Augustana Synod,
C. G. Bloomquist, Secretary.''

Pursuant to said assignment and the agreement of the parties, the contractor indorsed and delivered to the bank all the certificates which were thereafter issued by the architect. These certificates were then sent to and paid by the trust company and the amounts thereof were then deposited in the bank to the credit of the contractor and were paid out upon checks issued by the contractor. The amounts so deposited and thus paid out aggregated the sum of $85,403.75. The contract, except in respect to certain small items for which the architect deducted the sum of $500, was completely performed by the contractor on August 16, 1927, and on that day the architect issued and delivered a final certificate for the balance due the contractor for the sum of $14,306.55, upon receipt of which the contractor indorsed and delivered the same to the bank. This certificate was then sent by the bank to the trust company for payment but was not paid because of the existence of outstanding lienable claims and because the surety company had refused to perform its obligation under the bond to make good the loss sustained by the contractor on the job. There was at that time due and owing by the contractor to the bank for advances made by the bank to the contractor to enable him to perform the contract and evidenced by notes given by the contractor the sum of $12,500, with accrued interest thereon. There was also due and owing by the contractor certain lienable items aggregating the sum of $9,447.68. These lienable items not having been paid, liens were filed upon the building which were thereafter foreclosed and upon execution being issued thereon, the property was advertised for sale. In the meantime, the bank became insolvent and plaintiff, as receiver thereof, commenced this suit, seeking to recover against the contractor and the surety company a judgment for the amount due on said notes,

and also seeking to obtain as against the trust company and the Columbia Conference a decree that the bank's claim to the extent of the amount due was a first and valid lien upon the $14,306.55, which sum both the trust company and the Columbia Conference by their answers filed herein admitted was then in the hands of the trust company and was held by it for the purpose of paying the balance then due the contractor.

After the commencement of this suit and the filing of separate answers by the trust company and the Columbia Conference, the trust company, from the moneys then in its possession and control, but without the consent of the bank, satisfied all said lien foreclosure decrees by paying the sum of $11,177.03, which was the aggregate of the amounts decreed to the lien claimants.

The trust company and the Columbia Conference both set up in their separate supplemental answers said payment in defense of this suit. They also allege in said supplemental answers that they paid in addition thereto the further sum of $500 in payment of services performed by attorneys representing them in the defense of said lien foreclosure suits. They also allege in said supplemental answers that in the defense of this suit they have been compelled to pay $2,000 as attorneys' fees and that the trust company, because of this suit and of said foreclosure suits, has been compelled to perform unusual and extraordinary services for which they allege they are entitled to retain as compensation for such services $300 from said moneys in their possession.

Mr. W. P. Briggs, the secretary and trust officer of the trust company, testified that the trust company had in its possession, when the final certificate was delivered to it, the sum of $14,306.55; that it retained

possession of that sum because of outstanding lienable claims; that the trust company later paid in satisfaction of said claims, after liens therefor had been filed and foreclosed, $11,177.03, which reduced the amount held to $3,129.52, out of which the trust company paid on the order of the conference $1,500 as attorneys' fees, of which $500 was incurred in defense of the lien foreclosure suits, leaving a balance on hand of $1,629.52. Other testimony of the trust company later offered in the case showed that out of said sum of $1,629.52 the trust company had paid $1,000 as additional attorneys' fees for the defense of this suit and had deducted $300 for the unusual services it had been required to perform, leaving in its hands $329.52.

The learned trial court entered a decree awarding judgment in favor of plaintiff against the defendant Reeves for the sum of $12,500 with interest, costs and attorneys' fees added, all of which sums amounted to $14,527, and entered judgment against the defendant surety company for the sum of $14,017.88, with interest at the rate of 6 per cent per annum from September 20, 1927. It also decreed that the Lumbermen's Trust Company was entitled as an offset against the said sum of $14,306.55, which it had received for the payment of the final certificate, the sum of $11,177.03, the sum of $2,800, attorneys' fees, and the costs of the present suit taxed at $40.85, leaving, as the decree recites, the sum of $288.67, and decreed that said sum of $288.67 should be applied in partial satisfaction against the amount found to be due and for which judgment was entered against the defendant Reeves. The decree makes no reference to the item of $300 deducted for unusual services performed by the trust company, but it was included in the decree, for otherwise the amount which the plaintiff should have been

required to apply in partial payment of the judgment against Reeves would have been the sum of $588.67, instead of $288.67. From this judgment, the surety company has appealed.

Counsel for the surety company contend that in respect to the claim of the bank against the surety company for the amount of its advances to the contractor, this case is controlled by the doctrine in *Derby v. United States Fidelity and Guaranty Co.*, 87 Or. 34, (169 P. 500); *Wasco County v. New England Equitable Ins. Co.*, 88 Or. 465 (172 P. 126, L. R. A. 1918D, 72, Ann. Cas. 1918E, 656); and *Ashley & Rumelin v. Portland,* 90 Or. 40 (175 P. 447). We think, however, that the law of this case in respect to said contention is well settled by the case of *First National Bank of North Bend v. U. S. Fidelity & Guaranty Co.*, 127 Or. 147 (271 P. 57), where the facts upon which the bank based its claim of liability against the surety company were very similar to those upon which the bank in this case bases its claim against the defendant surety company. In that case, as in this, the defendant surety company relied upon the three cases cited by the surety company in this case. The facts in the three cases referred to were distinguished in the last case cited upon the following ground, the court saying:

"In that case [referring to the Wasco County case] the surety had nothing to do with and did not consent to the assignment to the bank. In the present case the surety company assented in the plainest manner possible to an assignment to the plaintiff bank, which widely differentiates the two cases."

In another part of the opinion the court said:

"The surety company, having by such arrangement induced the plaintiff to make the advances to the contractors, * * * consented and agreed to by the respondent, it would not be consistent with equity and

good conscience to permit the surety company to collect and retain a portion of the moneys so assigned and hypothecated to the bank to reimburse it for money so loaned and which remained unpaid. To do this would be a plain violation of the agreement, made understandingly by the respondent company.''

■■ In the instant case the surety company has collected no money from the owner, yet the evidence does show that it knew that the contractor had no money with which to perform his contract. It knew also that the contractor did not have sufficient money to even pay the premium on the bond which it executed and, knowing this, it induced the bank to make the advances so that the contractor would be able to perform his contract and, in reliance upon the assignment made and the agreement of the parties, it consented that all moneys earned by the contractor should be paid over to the bank to reimburse it for the advances it was to make to enable the contractor to fulfill his contract. Having induced the bank to advance the money in reliance thereon, it is now estopped to claim that it is not indebted for the amount thus advanced for that purpose by the bank. It also knew that, in the due course of business, the bank would exact the giving of notes by the contractor and that said notes would contain a provision that if not paid reasonable attorneys' fees would be allowed in any suit or action brought to enforce the notes. For that reason, it is not in a position to claim that it was not obligated under its contract to pay the notes which the contractor gave to the bank, together with reasonable attorneys' fees incurred in the enforcement of the notes.

Finding no error in the record, the decree appealed from must be affirmed.

Rossman and Kelly, JJ., concur.