Argued May 2; affirmed May 29, 1934

NALLEY *v.* HARDER ET AL.

(32 P. (2d) 1033)

*Henry S. Westbrook,* of Portland (Guy O. Smith, of Salem, on brief), for appellant.

*A. E. Reames,* of Medford, for respondent Thomas J. Kenney.

*W. J. Looker,* of Medford, for respondent Delroy Getchell.

BELT, J. This is a suit to enforce an alleged oral contract to devise and bequeath property. The plaintiff asserts that on May 11, 1928, he entered into an agreement with Anna C. Nalley, his former wife, whereby in consideration of his promise that he would, during her lifetime, give to her his companionship, counsel and advice, particularly in reference to her business matters, she would "at the time of her death leave and give to him" all of her property. Relative

to this alleged agreement the plaintiff testified that Anna C. Nalley said to him: "* * * if you will help me—I want your counsel, and if you will give me your counsel and help me in my business affairs and help me in every way that you possibly can, because I have got some business that has got to be attended to, and you are the only one I can depend on, I have got no one else, and I know your judgment is good" and that he replied, "Yes, Mrs. Nalley, I will help you". He states that she then said, "If you will come and help me and help me to take care of my business and help me in every way and give me your counsel at all times I will give to you all of my property", * * *. "Q. When did she say she would give it to you? "A. She said she would give me all of her property when she passed away—it would be all mine and she says: 'I know you will do the same by me'. I said: 'Yes, Mrs. Nalley, all I have is yours when I am gone'."

There are no questions of law involved. The decision hinges upon a question of fact. Has it been established by clear and convincing evidence that Anna C. Nalley and the plaintiff entered into the contract as alleged in the complaint? The record is voluminous and we shall therefore make reference only to those parts thereof upon which our conclusion is based.

After a married life of over 36 years, during which no children were born, the plaintiff on April 28, 1928, obtained a decree of divorce against his wife on the ground of cruel and inhuman treatment. In this divorce proceeding he charged among other things that his wife became imbued with the "idea of spiritual or divine healing" and in "disregard of her marital vows" treated him in a cruel and inhuman manner and circulated "false and slanderous statements" about him. She made no answer to these charges and

allowed the decree to be taken by default. On April 16, 1928, a short time prior to the issuance of the divorce decree, the Nalleys had a property settlement. In this settlement the plaintiff was paid $4,500 in cash, given the proceeds from sale of timber amounting to $5,000, and was also deeded the land from which the timber had been removed. An apartment house in the city of Medford, Oregon, was conveyed to Mrs. Nalley.

Anna C. Nalley died intestate on June 13, 1930. On the morning of her death, the plaintiff, upon his petition, was appointed special administrator of her estate. In his petition he alleged that "there is no next of kin" and that his appointment was necessary since the "property of said deceased is in danger of being lost, injured, and depreciated". Plaintiff thereupon took possession of all the decedent's property and personal effects. In his petition for appointment as special administrator the plaintiff made no reference to the alleged contract which is the basis of this suit.

Twelve days after the filing of plaintiff's petition, a distant relative in Illinois petitioned to be appointed general administrator. Plaintiff resisted this petition and asked to be appointed general administrator in order to hold the property for the next of kin. He said nothing about the alleged contract. At this juncture it may be well to state that, at the time of her death, Anna C. Nalley left surviving her no father, mother, husband, brother, sister nor child. Her nearest relative was an uncle, Robert C. Pointer, residing at Macomb, Illinois. She also had first and second cousins living at Kansas City.

Plaintiff made a trip to Kansas City and Macomb, Illinois, in an effort to be appointed general administrator. In all his consultations with the various rela-

tives, he made no claim of having any interest in his former wife's property. Neither did he say anything about any contract. He admitted that he was a divorced man. On this trip he endeavored to play one set of heirs against the other and, in order to avoid litigation and court expense, proposed a division of the estate among the various relatives and himself. This proposition, however, was rejected. Delroy Getchell of Medford was appointed general administrator.

In desperation, plaintiff consulted various counsel in an attempt to have the divorce decree set aside on ground of fraud and collusion. His greed for property knew no bounds. He was advised, in effect, that those who come into a court of equity must come with clean hands and that he was in no position to have the decree of divorce set aside. Still, he never mentioned anything about a contract. We wonder why he remained silent about such an important matter.

Anna C. Nalley's father, William A. Pointer, died in January, 1929, leaving her as his sole heir at law. In litigation involving the father's will and certain conveyances made prior to the execution thereof, the plaintiff obtained a decree that he was the owner of an undivided one-half interest in the property of the William A. Pointer estate: *Nalley v. First National Bank of Medford et al.*, 135 Or. 409 (293 P. 721, 296 P. 61, 76 A. L. R. 625). The plaintiff's interest in this estate amounted to $7,850. He now desires the property which his divorced wife obtained from her father's estate.

The plan to set aside the decree of divorce did not materialize. Hence this suit was instituted. We are asked to believe that within two weeks after plaintiff obtained his decree of divorce he made the contract

in question. It is highly improbable. Plaintiff admits that he never mentioned anything about the contract during the lifetime of his former wife. His explanation of why he remained silent is not convincing. Let the record speak. Cross-examination of plaintiff: "Q. In all of your transactions with both branches of this family, you have never stated to them prior to the institution of your suit that you had a contract with your deceased wife to succeed to this property have you? A. No sir. Questions by the Court: Q. Why not? A. How is that? Q. Why not? A. Well, that was just that we agreed not to say anything about this, Mrs. Nalley and myself, on the ground that our case was in the supreme court then with Mr. Pointer's estate and I was afraid it would make trouble in that case in the supreme court. That is the only reason and we agreed both not to say anything about it. Mrs. Nalley never said anything about it until just before we were to be married and she told these people. She was the first one ever said anything about it. Q. After she had died, that agreement was the reason you never said anything about it? A. Yes, because I hadn't said anything about it at all until after Mrs. Nalley passed away and after she passed away I told different ones about it, after they told me what she had said. Q. After she passed away, you had these conversations with relatives? A. Yes. Q. Why didn't you tell them about it? A. I didn't think it was best. Q. That is what I am interested in knowing—why you thought it was not best to tell them about it. A. Well, I didn't know whether — then it wasn't threshed out—whether I could set aside this divorce or not. I was keeping still on that account just to see how things was going to come out."

Plaintiff asserts that he and his former wife were very sorry about the divorce and contemplated remarriage. Yet we have the letter of Mrs. Nalley written about two weeks before her death wherein she stated: "Mr. Nalley has moved from the Heimroth onto Oakdale South across from the Catholic church, *so that is some relief to me to have him from under my nose.*" (Italics ours). When Nalley took possession of the property as special administrator he burned many of Mrs. Nalley's letters. This was admitted by him on the witness stand. Those letters which were produced threw no light upon the issues. While there is some evidence to the contrary, we are satisfied that Nalley and his former wife never became reconciled. There is slight reason to believe that the contract in question arose out of any "love feast". We think it arose in the mind of plaintiff when he became convinced of the futility of his attempt to have the divorce decree set aside.

The decree of the lower court that the plaintiff has no interest in the property of Anna C. Nalley, deceased, and that title to the same is vested in the heirs of Robert C. Pointer, deceased, is affirmed. Defendants are entitled to costs and disbursements.

RAND, C. J., and ROSSMAN and CAMPBELL, JJ., concur.

KELLY, J., not sitting.