Submitted on briefs February 23, affirmed July 31, 1956

## U. S. NATIONAL BANK OF PORTLAND *v.* ERICKSON and TERTELING & SONS ET AL

300 P. 2d 448

Koerner, Young, McColloch & Denzendorf, Portland, and James H. Clarke, Portland, for appellants.

Hugh L. Biggs, Portland, Hart, Spencer, McCulloch, Rockwood & Davies, Cleveland C. Cory, and John E. Huisman, Portland, for respondent, The United States National Bank of Portland (Oregon).

PER CURIAM.

The plaintiff The United States National Bank of Portland commenced a suit against the defendants R. L. Erickson, dba R. L. Erickson Company, J. A. Terteling & Sons, Inc., and J. H. Wise & Son, Inc. The trial court at the close of the evidence determined that the matter was triable as an action at law. No objection to the trial court's ruling was made, and all parties waived the right to a jury trial. Findings of fact were made and a judgment entered for the plaintiff against

the defendants for the sum of $22,800, together with attorney's fees and costs and disbursements. From this judgment the defendants J. A. Terteling & Sons, Inc., and J. H. Wise & Son, Inc., have appealed. The defendant R. L. Erickson, dba R. L. Erickson Company, has made no appearance in this court.

For the purposes of this opinion we will refer to the defendant R. L. Erickson, dba R. L. Erickson Company, as "Erickson", and to the defendants J. A. Terteling & Sons, Inc., and J. H. Wise & Son, Inc., as "defendants."

The defendants J. A. Terteling & Sons, Inc., and J. H. Wise & Son, Inc., as joint venturers, entered into a contract June 6, 1951, with the United States Government to rehabilitate 229 buildings situated at the Mountain Home Air Force Base, Mountain Home, Idaho. On June 12, 1951, these defendants entered into a "subcontract agreement" with the defendant R. L. Erickson, dba R. L. Erickson Company, to do the roofing, sheet metal, and felt siding work called for in the original contract.

On June 16, 1951, the date work was commenced on the subcontract, Erickson, being unable to finance the construction work, displayed to the plaintiff his copy of the subcontract agreement and a copy of the prime contract, and asked of the plaintiff a loan for the purpose of obtaining the necessary finances to carry on the subcontract agreement. The loan application was refused by the plaintiff. The testimony of Mr. Prideaux, an officer of the bank, on this point is as follows:

"He [Mr. Erickson] advised he had been awarded a job of roofing, siding and sheet metal at the Mountain Home Air Base job for Wise and Terteling who had a contract with the army engineers for rehabilitation of that base. We declined

to consider a loan at that time by reason of the fact that Mr. Erickson was of the opinion then, or so he expressed to us [,] that he would be under bond— perhaps I should explain why that would be.

"Q Go right ahead.

"A We realized that when a man makes application for a bond he thereby assigns to the bonding company all of his right and interest in monies due and to become due under the sub contract [sic] and inasmuch as we wished to be secured on the loan we then felt that he would not be able to assign invoices to us already having made an assignment to the bonding company. That being the case, application for credit was declined. As a matter of fact, as of that date, we could have made no advance even though the bonding company were not a problem, because no work had then been completed to the stage where invoicing could have been done as of that particular date."

No bond of any kind was given by Erickson to the defendants.

Before approaching the bank, and after receiving the subcontract, Erickson talked with a Mr. Carter, secretary of the defendant J. A. Terteling & Sons, Inc., Erickson's testimony being as follows:

"After I received the contract I knew that I would have to get finances from some source either from private people or the bank and so being in Idaho or in Boise, being a stranger, I knew that that help would have to come from Portland. So, I called I believe Mr. Hill of the J. A. Terteling Company and asked him [,] because I knew him a little bit more than the others, what the company's reaction was to assignment of invoices on progress of work completed. So, he referred me to Mr. Carter of the same firm. So, I called on Mr. Carter and he advised me that it was permissible and that he would write a letter to that effect which I asked for.

"Q (BY MR. BIGGS) Write a letter to whom, Mr. Erickson?

"A To, I believe at that particular time it was just a letter to whomever it may concern. As I hadn't been to Portland yet to make arrangements, and I believe that answers the question."

On June 15, 1951, Mr. Carter wrote the following letter to the plaintiff:

"Gentlemen:

"The R. L. Erickson Co. of Portland is negotiating a subcontract with our company and J. H. Wise & Son, Inc., a joint venture, under the U. S. Army contract DA-45-164-eng-1136 at Mountain Home Air Force Base, Mountain Home, Idaho, which subcontract will be for roofing and felt siding.

"In arranging the financial requirements to handle the subcontract, this company has requested that we write you in connection with their proposal to assign contract earnings in lieu of any advances that may be obtained from the bank. This arrangement will be satisfactory with us as a member of the venture with the qualification that any known labor or material liens that come to our attention in connection with this subcontract will have preference in payment before the assignment.

"The payments to be made under this subcontract will be on a basis of completed work plus allowances for any contract materials on hand at the jobsite. The subcontractor will be paid based on the quantities as shown on the progress estimates from the principal.

"I trust this information will be sufficient for you to handle necessary arrangements with the R. L. Erickson Co. as they desire."

On July 2, 1951, Erickson again made application for a loan from the plaintiff, and at this time presented a progress report and request for payment from the defendants showing he had completed, under his subcon-

tract, work of the value of $38,063.31. The progress report was confirmed as substantially correct by a Mr. Matelich, the project manager for the defendants. On July 6, 1951, the plaintiff loaned Erickson the sum of $22,800 for a period of 30 days, and as of that date by airmail notified the defendants of the loan made and the assignment to the plaintiff of the moneys due Erickson under the progress report, requesting defendants, if there were any irregularities found, to so advise. Plaintiff was never notified of any irregularities.

On or about July 11, 1951, the defendants began advancing Erickson money, which advances continued until Erickson had completed the subcontract.

After several requests had been made by plaintiff of defendants as to why payment was not forthcoming, defendants on November 21, 1951, through Mr. Carter, advised the plaintiff by letter as follows:

"Gentlemen:

"In reply to your letter of November 2 regarding the status of the R. L. Erickson Co. contract with the joint venture of J. H. Wise & Son and our company at Mountain Home, Idaho, I wish to advise that the following steps have been taken in this regard and which I trust will give you the information which you desire.

"The past week, a meeting was held with Mr. Erickson, Mr. Matelich, Mr. Wise, Mr. N. L. Terteling, and myself. There was also a Mr. Mueller who is a business associate of Mr. Erickson. Mr. Erickson presented a statement that had been prepared by a public accountant, Richard D. Britton, Cascade Bldg., Portland 4, Oregon, on the status of his contract at Mountain Home. This statement indicated a loss from operations of $49,922.60; however, the statement was incomplete as far as we were concerned, and it was requested that more complete information be furnished us.

"In reviewing the history of the subcontract with Mr. Matelich, the following information was furnished:

"That Mr. Matelich had received a phone call from Mr. Pardeau of your bank to substantiate the correctness of an estimate due for work that R. L. Erickson had performed, which was indicated as being substantially correct by Mr. Matelich;

"That a notice was received from your bank dated July 6 that assignment had been made by Mr. Erickson; however, there appears to be no record of any acceptance made on this assignment and, in the meantime, before the estimate payment was due, the status of this subcontract was reviewed with Mr. Erickson, Mr. Terteling, Mr. Matelich, Mr. Wise, in which Mr. Erickson indicated he had insufficient funds with which to finance the anticipated increased payroll needs for the subcontract schedule. It was, therefor, [sic] agreed that moneys would be advanced to Mr. Erickson in the gross amount of each weekly payroll, to be deposited to a payroll account for the purpose of financing these payrolls. This was done, as well as payments being made on materials furnished to the job. The actual payments made for the liens of this labor and equipment have exceeded the earnings which Mr. Erickson has due, according to the joint venture and the U.S. Engineer estimates; in fact, the payments for such items to date exceed approximately $7,000-$12,000.00 the amount of earnings.

"Mr. Erickson indicated he felt he had justifiable claim for additional earnings. It was indicated that, from information submitted to date, we were unable to agree with his contention, but, that if he would submit in complete enough detail the facts and figures and, if we felt they could be justified to the U. S. Engineers, we would be glad to submit a claim to them for him.

"Based upon the information we have at present, the picture is very discouraging on the status not only of your advance to him, but of our excess

payments for lienable labor and materials payments in excess of his earnings.

"We shall be very happy to keep you informed of the progress, if any, made and further information and/or claims that may be submitted for Mr. Erickson to the principal on this contract.

"I regret that this matter was not handled for you sooner, but the status had not been determined by me at an earlier date.

"If there is any further information that I can furnish you at this time which you so desire, please let me know and I shall be happy to try and furnish it."

The subcontract agreement between the defendants and Erickson contained the following:

"Article XI. Payment for Labor and Supplies.

"The Subcontractor shall promptly make payment to all persons supplying Subcontractor with labor, materials and supplies for the prosecution of the work or in connection therewith. Any such payments not made by the Subcontractor when due may be made by the Contractor and the amounts thereof deducted from any moneys at any time due the Subcontractor under this agreement.

\* \* \* \* \*

"Article XVIII. Partial Payment.

"Partial payments for work performed under this agreement will be made by the Contractor as and when it is paid therefor by the Principal, and will equal the value of the work done by the Subcontractor according to the engineer's estimate at the said unit prices, less the sum of previous payments and less a percentage equal to the percentage retained by the Principal; PROVIDED, that if the Subcontractor is indebted to the Contractor for cash advances, supplies, materials, equipment, rental or other proper charges against the work, the amount of such indebtedness may be deducted from any payment or payments made under this provision."

The defendants assert on this appeal that the matter was triable in equity and the trial court's findings of fact are advisory only and not controlling upon this court.

■ Objections relating to whether the cause is triable at law or in equity should be made in the trial court, and, unless the issues raised are wholly beyond the jurisdiction of a court of law or equity, the unchallenged ruling of the trial court determining upon which side of the court the matter lies, acquiesced in by the parties, will not be reviewed on appeal. *Flaherty v. Bookhultz*, 207 Or 462, 297 P2d 856; *Ward v. Town Tavern et al.*, 191 Or 1, 228 P2d 216, 42 ALR (2) 662; *United Brokers Co. v. Dose*, 143 Or 283, 22 P2d 204; *Topolas v. Skotheim et al.*, 126 Or 683, 250 P 235, 270 P 753.

However, as we view the matter, it is immaterial to the conclusion reached whether the case is considered as being at law or in equity. The facts are not in dispute, and the only logical conclusions possible to draw are: (1) That before any work was commenced by Erickson under his subcontract with the defendants, the defendants knew he was unable financially to proceed; (2) that the defendants wrote the letter to the plaintiff to induce it to finance Erickson so that he could fulfill his obligation to them under the subcontract, which would in turn fulfill their obligation to the United States Government as prime contractors; (3) that the plaintiff advanced moneys to Erickson upon the basis of the letter authorizing the assignment to it of all moneys due Erickson for work performed on the subcontract to July 3, 1951, subject only to the right of the defendants to withhold from the moneys due under the assignment Erickson's debts due and unpaid to his laborers and materialmen; and (4) that,

with knowledge of the plaintiff's acceptance of their agreement to honor Erickson's assignment of contract earnings, the defendants themselves began to advance moneys to Erickson, and retained all of the moneys paid to them as prime contractors to repay themselves for their advances to Erickson.

The defendants contend that "Respondent Erickson defaulted on the subcontract before any sums were paid to him for the work, and, pursuant to their obligation to perform the prime contract, appellants were compelled to make advances against Erickson's subcontract on account of labor and material claims in the amount of $189,266.08, * * * which was $7790.06 in excess of the subcontract price of $181,476.02," and that they "were entitled under the terms of the subcontract and the prime contract and as a matter of law to retain all sums received from the United States for subcontract work performed by Erickson."

Whether the defendants' rights to a preferred position in the moneys over general creditors of Erickson arose by reason of law or the contract of the parties is immaterial. The plaintiff apparently does not contend that the defendants' position was not preferred, but that the defendants by their letter waived these rights, and are now estopped to assert them.

The trial court held that these rights were waived by the defendants and they were estopped to now assert them.

■ It is a well-established principle of law in this state that a person in a protected position may waive this preferred position, and by so doing be then estopped from asserting his protected rights. *Ore. Sur. & Cas. Co. v. Bank of Eugene,* 136 Or 573, 300 P 336; *Cole v. Reeves et al.,* 135 Or 98, 294 P 1099; *First*

*Nat. Bk. v. United States F. & G. Co.,* 127 Or 147, 271 P 56.

■ The letter addressed to the plaintiff by the defendants was given to Erickson for the purpose of inducing the plaintiff to advance credit to Erickson, and, when this credit was received, an agreement in accordance with the letter came into existence. The letter having been prepared by the defendants, if ambiguous, is to be construed most favorably to the plaintiff. *Ore. Sur. & Cas. Co. v. Bank of Eugene,* supra; *Salem Kings Products Co. v. Remp,* 100 Or 329, 196 P 401.

The defendants contend that the use of the word "liens" in the letter means "debts," since all parties were cognizant of the fact that this contract was to be performed for the United States Government, and liens upon the property could not be had.

The word "liens" as used in the letter expresses more than debts; as used it refers to debts due and unpaid by Erickson, not to debts to be created subsequent to the assignment. As previously stated herein, the letter authorized the assignment of all moneys due Erickson upon the subcontract, subject only to the right of the consenting defendants to withhold moneys which Erickson himself owed his laborers and materialmen. It did not authorize nor permit them to advance money to Erickson for the purpose of meeting future payrolls and material bills, and then claim a preferred position over the plaintiff.

There is no evidence in this case that there were ever due and unpaid labor and material bills which the defendants paid. On the contrary, the evidence conclusively shows that from time to time the defendants placed themselves in the position of creditors of Erickson by advancing moneys to him at his request.

■ The general rule is stated in 31 CJS 362, Estoppel § 114, as follows:

"As a general rule, where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. This rule obtains regardless of the particular intent of the party whose acquiescence induces action."

The trial court correctly held that there had been a waiver which now estopped the defendants from asserting their prime rights.

■ The defendants contend that they are not liable for the attorneys' fees as allowed by the trial court. We are unable to distinguish on principle the rule established by this court upon somewhat similar facts in *Cole v. Reeves,* supra, where we said on page 107:

"In the instant case the surety company has collected no money from the owner, yet the evidence does show that it knew that the contractor had no money with which to perform his contract. It knew also that the contractor did not have sufficient money to even pay the premium on the bond which it executed and, knowing this, it induced the bank to make the advances so that the contractor would be able to perform his contract and, in reliance upon the assignment made and the agreement of the parties, it consented that all moneys earned by the contractor should be paid over to the bank to reimburse it for the advances it was to make to enable the contractor to fulfill his contract. Having induced the bank to advance the money in reliance thereon, it is now estopped to claim that it is not indebted for the amount thus advanced for that purpose by the bank. It also knew that, in the due course of

business, the bank would exact the giving of notes by the contractor and that said notes would contain a provision that if not paid reasonable attorneys' fees would be allowed in any suit or action brought to enforce the notes. For that reason, it is not in a position to claim that it was not obligated under its contract to pay the notes which the contractor gave to the bank, together with reasonable attorneys' fees incurred in the enforcement of the notes.''

The judgment of the trial court is affirmed.

Justice ROSSMAN did not participate in this opinion.

Justice WARNER did not participate in this opinion.