Argued and submitted October 29, 1979,
affirmed February 11, 1980

CALLAGHAN, et al,
*Appellants,*
*v.*
REED,
*Respondent.*

(No. 8569, CA 13328)

605 P2d 1382

[489]

Neal G. Buchanan, Klamath Falls, argued the cause and filed the briefs for appellants.

Robert S. Hamilton, Klamath Falls, argued the cause for respondent. With him on the brief was Beddoe & Hamilton, Klamath Falls.

Before Schwab, Chief Judge, and Buttler and Roberts, Judges.

ROBERTS, J.

Buttler, P.J., filed concurring opinion.

[490]

## ROBERTS, J.

Plaintiffs appeal from a declaratory judgment order of the trial court declaring valid and enforceable an agreement to convey real and personal property.

The facts are undisputed. Defendant entered into the subject agreement with his mother, Zelma Reed, on January 1, 1975. The agreement provided that Zelma Reed would sell certain real and personal property to defendant for a stated price and that he would convey to her certain other real property as a down payment and pay the balance at a stated rate annually during his mother's lifetime.

The agreement included the following provision:

"* * * It is the intent and purpose of this paragraph that there shall be no actual conveyance by deed from Zelma to Charles until after the death of Zelma, so that in the event Charles predeceases Zelma, Zelma will receive back the real property complete with all right appurtenant thereto. * * *"

It was also stated that defendant's mother agreed to "execute a warranty deed conveying the real property to Charles at the time this agreement is executed, provided that such warranty deed shall not be delivered to Charles until authorized by Zelma."

The agreement further provided that defendant would maintain the premises in good condition, be responsible for all expenses incurred during the life of the agreement and allow his mother or her agents to come on the property at reasonable times to make inspection. It was required that defendant receive written permission from his mother before assigning the property because the contract was based in part upon his knowledge of the land. The agreement was stated to be binding upon the parties and their heirs, successors and assigns.

On May 28, 1975, Zelma Reed executed a will, dividing her property among defendant and his three

[491]

sisters. The will did not make disposition of this property. On January 15, 1978, Zelma Reed died; she had never executed the deed provided for in the agreement.

Plaintiffs are defendant's sisters and the residuary heirs under Zelma Reed's will. They sought a declaratory judgment that the agreement was void. On appeal they argue that the trial court erred in declaring the agreement enforceable, contending that the agreement is testamentary in nature, too indefinite to be enforceable, and provides for no bilateral obligation.

Plaintiffs first argue that because the deed would not change hands until Zelma Reed's death, the parties attempted to do by agreement what should have been done by means of a will. Defendant's mother made an enforceable promise to execute a deed; the fact that she did not execute the deed is of no moment, since defendant could require execution of the deed under the terms of the contract. Defendant had possession and present use of the property and the enforceable promise of a deed, with only delivery postponed. A deed or contract to sell real estate is not testamentary in character where it passes a present interest, merely postponing enjoyment. *In re Estate of Verbeek,* 2 Wash App 144, 467 P2d 178 (1970); Annot. 31 ALR2d 532, 538 (1953). The Supreme Court has held that where a deed is executed with delivery postponed until the death of the grantor, a valid present conveyance of an interest in land is accomplished. *Masquart et al v. Dick, et al,* 210 Or 459, 310 P2d 742 (1957); *Nalley v. First Nat. Bank, Medford,* 135 Or 409, 293 P 721, 296 P 61 (1931). We see no reason to distinguish between the execution of a deed and the enforceable promise to execute a deed. Defendant had transferred property to his mother as a down payment and had made the annual payments as required in the agreement. Under these circumstances, the existence of a forfeiture clause in the event that the totality of the consideration was not forthcoming due to defendant's death did not change the fact that defendant had a

sufficient enforceable present interest to prevent the contract from being testamentary in nature.

Plaintiffs also contend that the instrument is too indefinite to be enforceable, apparently because the number of payments to be made is indefinite. However, we find the agreement to be clear on its face. The amount of consideration is set by the agreement, as is the amount of down payment and the amount of money to be paid annually. The trial court analogized this to agreements whereby one agrees to support someone for life for consideration presently granted. Here, as there, the number of years for which defendant would be obligated was uncertain, but the extent of his obligation during his mother's lifetime, however long that might have been, was clear. We find the contract sufficiently definite to be enforceable.

Finally defendant contends that there is no bilateral obligation because Zelma Reed only agreed to convey should she predecease her son. We agree with the following conclusion of the trial court:

"* * * In the view of this Court, this contention construes an intended condition subsequent to be a condition precedent. In short, it is the clearly expressed intention of the parties to provide for the contrary of this intention. It is of no particular moment that the Decedent had not executed a deed. This part of the agreement was executory and to follow the signing. It was the obvious and expressed intent of the parties that she do so at a later time, and, that provisions be made for an escrow-type delivery upon her death. The same result could have been accomplished by Decedent deeding to Defendant at the time of the execution of the agreement and Defendant executing and placing in escrow a deed back to Decedent in the event he predeceased her. * * *"

The trial court properly declared the agreement to be enforceable.

Affirmed.

[493]

**BUTTLER, P. J.,** concurring.

Although I concur with the majority opinion in affirming the judgment of the trial court, I am not sure that I understand its reasoning and would like to state my reasons for concluding that the agreement is enforceable.

The agreement starts out clear enough: Charles and Zelma agreed that Charles would purchase from Zelma the real property in question for the sum of $97,230, and the farm machinery for the sum of $5,100, for a total purchase price of $102,330. The purchase price was to be paid by Charles's conveying to Zelma certain described real property (which he did), for which Zelma credited the sum of $29,330 to the purchase price, leaving a balance of $73,000, which the contract provides was to be paid "on an annual annuity basis, with Charles to make payments to Zelma in the amount of $6,400 on January 1 of every year beginning with January 1, 1976, during the lifetime of Zelma." Charles made those payments until Zelma's death.

So far, the only ambiguity lies in whether (1) Charles was required to pay the full sum of $73,000, even though Zelma died before that amount was paid, or (2) Charles was required to make annual payments of $6,400 as long as Zelma lived, regardless of how long that may be, or (3) Charles's obligation was to pay Zelma $6,400 annually until she died, or until he had paid the balance of $73,000, whichever occurred first. The agreement was drawn by Zelma's attorney, and therefore must be construed most favorably to Charles. *U. S. Nat. Bank v. Erickson et al,* 208 Or 141, 300 P2d 449 (1956). So construing that part of the agreement, I conclude that the payments terminated upon the death of Zelma and that Charles has performed everything required of him under the agreement. I would also conclude that if Zelma had continued to live after Charles had paid the total remaining purchase price of $73,000, he would have paid the

[494]

full purchase price required of him and would have had an absolute right to a deed.

The next paragraph of the agreement adds to the ambiguity. It provides:

"2. In the event Charles should predecease Zelma, resulting in Charles being unable to make the annual annuity payments called for herein, the real property sold hereunder by Zelma to Charles shall revert to Zelma, with all annuity payments, as well as the down payment, to be considered as just and reasonable rental for the use of the real property by Charles during his lifetime. It is the intent and purpose of this paragraph that there shall be no actual conveyance by deed from Zelma to Charles until after the death of Zelma, so that in the event Charles predeceases Zelma, Zelma will receive back the real property complete with all right appurtenant thereto. Therefore, during Zelma's lifetime no right appurtenant or running with the land, including but not limited to water rights and U. S. Forest Service permits, shall be alienated from the land without the written consent of Zelma. However, Charles shall be entitled to receive the benefits of his water rights, Forest Service permits and other like items as long as Charles is alive. In connection therewith, Zelma agrees to execute any and all documents necessary to effectuate this result. In addition, Zelma agrees to execute a warranty deed conveying the real property to Charles at the time this agreement is executed, provided that such warranty deed shall not be delivered to Charles until authorized by Zelma. In addition, Zelma shall execute a bill of sale on the farm machinery being sold to Charles, which bill of sale shall be delivered to Charles upon Zelma's receiving a properly executed warranty deed for the property being conveyed by Charles to Zelma."

The majority opinion quotes the second sentence from the above provision, and apparently concludes that Charles would not be entitled to a deed until Zelma's death, and that he would have to survive her death before he was entitled to a deed. I am not at all sure that this is the case, particularly when the agreement is construed most favorably to Charles.

[495]

The first sentence does not provide unequivocally that Charles forfeit everything if he should predecease Zelma. To so construe the paragraph is to ignore the language, "resulting in Charles being unable to make the annual annuity payments called for herein." When the first sentence is read in conjunction with the second sentence, I think the agreement means that if Charles dies before Zelma, at which time he has not paid the remaining balance due under the agreement, all of Charles's interest in the real property would be revested in Zelma. This construction is supported by the next to the last sentence of the quoted paragraph: "In addition, Zelma agrees to execute a warranty deed conveying the real property to Charles at the time this agreement is executed, provided that such warranty deed shall not be delivered to Charles until authorized by Zelma." Obviously, Zelma could not authorize anything after she had died. I think the last-quoted sentence means that if Charles had paid the entire balance of the purchase price prior to Zelma's death, he was entitled to a deed.

If my construction of the agreement is correct, appellant's contention that the agreement is void because it was testamentary in character and was not executed with the formalities required for a valid will has no merit. Charles had a substantial present interest in the real property immediately after it was executed and would have been entitled to a deed if he had paid the entire remaining balance of the purchase price during Zelma's lifetime. Charles was in physical possession of the farm, and had been for some time prior to the execution of the agreement; Zelma was not free to transfer title to a third party so long as Charles was not in default. He was not.

Because Charles has done everything required of him under the agreement, he is entitled to a deed to the farm from Zelma's personal representative, and therefore, I concur in the affirmance of the judgment of the trial court.