Argued June 25, decided July 9; On Rehearing decided October 15, 1912.

### THRUSH *v.* THRUSH.*

(125 Pac. 267.)
(126 Pac. 994.)

**Deeds—Delivery to Third Person—Effect.**

1. Where, on the execution of a deed, it is deposited with a stranger to be delivered to the grantee on the grantor's death, and the grantor intends to and does retain possession and con-

---

*As to whether a delivery of a deed by a grantor to a third person, with directions to await grantor's death, constitutes a delivery to the grantee, see note in 38 L. R. A. (N. S.) 942.

For authorities on the delivery of a deed to third person to be delivered to grantee after grantor's death upon performance of conditions by grantee, see note in 9 L. R. A. (N. S.) 317.        REPORTER.

trol over it after such delivery, it is not effectual to pass the title, but, if the grantor parts with the possession and control of the deed absolutely at the time of delivery, reserving no right to recall it, the delivery is complete, and the grantee will succeed to the grantor's title on his death.

Deeds—Delivery to Third Person—Intent of Grantor—Evidence.

2. Evidence held to warrant a finding that a delivery of certain deeds to a third person, with directions that they be delivered to the grantees on the grantor's death, was absolute at the time of delivery, without any intention on the grantor's part to reserve any right to recall or alter the provisions of the deeds, and that he could not therefore avoid the passing of title by obtaining possession from the custodian and destroying the deeds during his lifetime.

Deeds—Delivery.

3. If a grantor did not intend to permanently part with the control or possession of deeds executed to his children, but intended them to be testamentary in character and deposited them with his daughter for her to hold subject to his control, there was no delivery so as to pass title.

Deeds—Delivery.

4. The question of when a deed executed and deposited with a stranger to be delivered upon the grantor's death is effectual to pass title depends upon whether the grantor retains control over the deed after delivery or parts absolutely with possession thereof at that time.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

Abram Thrush, who is about 87 years old, in 1902 executed to each of four of his children a deed to a portion of his real estate: To Emry H. Thrush, 80 acres; to Abram Lincoln Thrush, 112½ acres; to Orville H. Thrush, 40 acres; and to Mary Thrush, 40 acres, as a final disposition of so much of his property. The deeds were placed in the custody of Mary Thrush not to be delivered to the grantees therein until the death of the grantor who was to have the possession and the pro-

ceeds therefrom during his life.  A few months before
this suit was commenced, Abram Thrush procured from
Mary the deeds in favor of the plaintiff and Abram
Lincoln Thrush and destroyed them, and on November
19, 1909, executed to plaintiff a deed to 40 acres of the
tract included in the first deed to him, and conveyed to
Abram Lincoln Thrush the other 40 acres included in the
first deed to plaintiff.  Thereupon plaintiff brought this
suit against Abram Thrush, Abram Lincoln Thrush, and
Mary Thrush to cancel the later deed to Abram Lincoln
Thrush of date November 19, 1909, and to remove the
cloud cast upon plaintiff's title thereby.

To this complaint the defendant Abram Thrush
answered, alleging that the deeds executed in 1902 were
not delivered and were subject to his control, and that
he destroyed them for the purpose of making other dis-
position of his property.

Upon the trial the court found that the deed executed
in 1902 in favor of the plaintiff was delivered to Mary
Thrush to be held by her until the death of Abram
Thrush, and then to be delivered to the grantees; that
it was not subject to recall by the grantor; and rendered
a decree accordingly.                        AFFIRMED.

For appellants there was a brief over the names of
*Messrs. Cardwell & Watson,* with an oral argument by
*Mr. James O. Watson.*

For respondent there was a brief over the names of
*Messrs. Brown & Eddy,* with an oral argument by *Mr.
B. L. Eddy.*

Opinion by MR. CHIEF JUSTICE EAKIN.

So far as disclosed by the evidence, the deed in this
case is an ordinary warranty deed and contains no con-
ditions for reservations.  The condition as to the dis-
position of the deed was oral, by which the deed was
to be held by Mary Thrush, and the evidence as to the
terms thereof is somewhat conflicting.

1. It is established by the weight of authority that, if upon the execution of a deed it is deposited with a stranger to be delivered to the grantee upon the death of the grantor, and the grantor intends to and does retain possession and control over it after such delivery, such delivery is not effectual to pass the title; but if he parts with the possession and control of it absolutely at the time of the delivery, reserving no right to deliver it or alter its provisions, it is a good delivery, and the grantee will, upon the death of the grantor, succeed to the title. *White* v. *White,* 34 Or. 141, 148 (50 Pac. 801: 55 Pac. 645) ; *Hoffmire* v. *Martin,* 29 Or. 240 (45 Pac. 754) ; *Foote* v. *Lichty,* 60 Or. 542, 547 (120 Pac. 398).

2. And there is but one question for decision here, namely: Was the deed delivered uoconditionally to Mary Thrush to be held by her until the death of Abram Thrush, and then to be delivered to the grantee? The effect is the same whether there was some consideration for it or whether it was intended as a voluntary gift. *Fain* v. *Smith,* 14 Or. 82, 84 (12 Pac. 365: 58 Am. Rep. 281). There is some conflict in the evidence upon that point. Abram Thrush testifies that he retained possession of the deed, and that Mary was only the custodian of it for him. Mary testified to the same effect:

"They (the deeds) were laying on the table, and after dinner was over Mr. Wells gathered those deeds up and handed them to father and father handed them to me and told me to take care of them until he called for them, and until after his death, and then to be handed to the boys if he did not call for them."

Also Nina Baldwin, a granddaughter of Abram Thrush, who was a witness to the deeds, testified that Abram Thrush delivered the deeds to Mary "to put away and keep for him until he called for them, or until after his death to give them to the boys." To the contrary is the testimony of Mrs. Ella Jenney, also a grand-

daughter of Abram Thrush, and a witness to the deeds. She testified that the deeds "laid on the table until after dinner, and then Mary Thrush picked them up * * and was to keep them until grandfather died, and then they were to be turned over to the boys and recorded. * * "

"Q. Did your grandfather say anything about taking care of them for him or for the boys?

"A. She was to take care of them for the boys, not for him, but for the boys, and hers for herself. * * He said the deeds were not to be recorded until after his death, and then they were to be turned over to each one, and they would have their own recorded."

Abram Lincoln Thrush came to the house just after the execution of the deeds, while the family were at dinner. He testified that:

"My father said that he concluded to have his papers made out just as he wanted them made out; he wanted to deed this land over to the children; that he deeded me 100 acres of the Sam Belieu place. * * Father said them deeds should not be recorded until after his death, * * and he was to have all the proceeds that came off the place. * * He said Mary is to hold the deeds; they are there in the chest, until after his death, and then each one take his own deed and have it recorded."

Mr. W. R. Wells, a justice of the peace, drew the deeds and took the acknowledgments thereto, and Abram Thrush consulted with him as to the manner of disposing of his property, whether by deed or by will, and Mr. Wells advised him that:

"If he made deeds, the deeds could be delivered to some party to hold until his death, and then they could be delivered over, and there would be no cost to it, and that is the way he decided to do it. * * I put the deeds * * in an envelope and handed them to Mary, according to his instructions, to hold the deeds until his death, and then deliver them to the parties that they were drawn to."

Other witnesses testified to the fact that Abram Thrush said to them that the deeds were delivered to

Mary to be held until his death, and he was to have the crops until that time; also that Mary had made several statements in conflict with her testimony here.

The preponderance of the evidence is convincing that the deeds were delivered unconditionally to Mary Thrush to be held until her father's death, and then to be delivered to the grantees, and they were beyond the control of Abram Thrush. Therefore the destruction of the deed by the grantor did not affect its operation or revest the title in him. *Chambers* v. *Stewart,* 2 Ohio N. P. 287; *Ellington* v. *Currie,* 40 N. C. 21; *Bury* v. *Young,* 98 Cal. 446 (33 Pac. 338: 25 Am. St. Rep. 186). See *Munro* v. *Bowles,* 187 Ill. 346 (58 N. E. 331: 54 L. R. A. 865, note "e," page 903).

Plaintiff was entitled to the decree given in the circuit court and the decree is affirmed.          AFFIRMED.

Decided October 15, 1912.

ON REHEARING.

(126 Pac. 994.)

Opinion PER CURIAM.

3. Upon a careful re-examination of the case, a majority of the court are of the opinion that the evidence fails to show an intention on the part of Abram Thrush to permanently part with the control or possession of the deeds executed by him to his children during his lifetime; but strongly indicates that they were testamentary in character, and were deposited with his daughter with the intent that she should hold them for the grantor and subject to his control. In this view of the case, there was no delivery, and no title passed to the grantees.

4. As stated in *Hoffmire* v. *Martin,* 29 Or. 240 (45 Pac. 754), and reiterated in *Foote* v. *Lichty,* 60 Or. 542

(120 Pac. 398) : "The solution of the question as to when a deed, executed and deposited with a stranger to be delivered to the grantee upon the death of the grantor, is effectual to pass the title, 'depends upon whether the grantor intends to and does retain dominion and control over it after such delivery, or parts with the possession and control of it absolutely at the time of such delivery.'" The evidence here is conflicting, but we are of the opinion that it preponderates in favor of the theory that the conveyances were to be kept by Mary Thrush, as bailee for her father, and subject to his control, and that it was not his intention to relinquish his right to recall them during his lifetime, if he should see fit to do so.

The decree of the circuit court is reversed, and a decree will be entered for defendant, with costs.

REVERSED ON REHEARING:
FURTHER REHEARING DENIED.

