(No. 14091.—Reversed and remanded.)

EMILY H. SELBY, Appellee, *vs.* GEORGIA LITTLE SMITH, Trustee, Appellant.

*Opinion filed February 22, 1922.*

1. EJECTMENT—*what testimony of plaintiff is incompetent as against a devisee.* Where a plaintiff in ejectment claims under a deed and the defendant claims as a devisee of the grantor, the plaintiff is not competent to testify to conversations she had with the grantor as to his depositing the deed with a third person for her nor to the contents of a letter from him referring to the deed.

2. DEEDS—*when deeds are not delivered to grantees.* Where a grantor conveys his property to one who holds it as trustee without any written declaration of trust but upon the verbal understanding that he will make deeds to whomsoever the grantor may direct, the delivery of such deeds by the trustee to the original grantor is not a delivery to the grantees named therein.

3. SAME—*delivery to third person without directions does not constitute delivery to grantee.* The delivery of a deed to a third person as the grantor's agent, without any direction to deliver to the grantee, does not constitute a delivery.

4. SAME—*to constitute a delivery grantor must indicate intention to vest title in the grantee.* While no particular form is prescribed for the delivery of a deed, it is essential that the grantor shall indicate unequivocally by words or deeds, or both, that he parts with control of the instrument for the purpose of investing the grantee with the title.

5. SAME—*what is necessary to constitute delivery in escrow until death of grantor.* A deed may be delivered in escrow to a person other than the grantee, to be delivered to the grantee upon the death of the grantor, and such a delivery will be sufficient to convey the title; but there must be an actual delivery and a loss of dominion and control by the grantor over the instrument.

6. SAME—*when burden is on the grantee to prove delivery in escrow upon condition.* The fact that a deed was not in the possession of the grantee until after the grantor's death but was in the possession of a third person makes a *prima facie* case against the delivery of the deed even though the third person afterward delivered it to the grantee, and if the delivery to the third person was a good delivery in escrow upon condition, it is incumbent upon the grantee to overcome the *prima facie* case against delivery by showing what the condition was and that it had been complied with.

7. SAME—*when deed deposited with custodian is not effective as a conveyance.* A deed deposited in a bank, with no instructions and no authority to the depositary to deliver it to anyone or to open it or to do anything with it, and which remains accessible to the grantor, is not effectually delivered to the grantee named in the instrument, and where the grantor remains in possession of the property and exercises dominion over it until his death the grantee cannot maintain ejectment against the grantor's devisee, who is in possession after the grantor's death.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

BARBER & BARBER, for appellant.

C. F. MORTIMER, and EDMUND BURKE, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

From a judgment in an action of ejectment in the circuit court of Sangamon county in favor of the plaintiff for the possession of the premises in controversy, Georgia Little Smith, one of the defendants, has appealed.

It was stipulated that the parties both claimed through Gershom J. Little, who acquired title on November 3, 1908. On April 13, 1910, he conveyed the premises and others, subject to a mortgage for $5000, to Warren E. Lewis by warranty deed, which was recorded on April 11, 1911. The grantee never had possession or claimed any interest in the property but accepted the title merely for the accommodation of Little. He testified that after the execution of the deed to himself his recollection was that he executed a deed to somebody and delivered it to Little, and that later that deed was brought back and in lieu of it he executed two other deeds making a division of the property, part in one deed and part in another, and delivered those deeds to Little, though he did not remember the names of the grantees. The deed under which the appellee claims is a quit-claim deed dated July 18, 1910, from Warren E. Lewis and wife, describing the premises in controversy, in which the name

of Emily H. Selby appeared as grantee in Little's handwriting. On the hearing Lewis testified, with the deed before him, that the name of the grantee appeared to have been typewritten, but he could not tell what the typewritten name was, and he was not positive to whom the second deed was made. He did not know when the name "Emily Selby" was written in or whether it was written after the deed left his hands. The deed never came to the possession of the appellee. It was produced on the trial from the possession of Pascal E. Hatch in answer to a subpœna. He was secretary of the First Trust and Savings Bank of Springfield and had had business dealings with Little for many years. Little left with him for safekeeping a sealed envelope, in which was another envelope which was not sealed but contained a third envelope, on which was written in Little's handwriting, "Dr. E. H. Selby, Suite 400, No. 100 State St., Chicago." This third envelope was sealed and contained the quit-claim deed from Lewis to the appellee, together with the following unsigned letter, which was typewritten, except the name "Emily H. Selby" in Little's handwriting:

"SPRINGFIELD, ILLINOIS, *April 6th, 1911.*

"*My Dear Friend—Emily H. Selby:* Enclosed you will find deed to No. 436 and No. 438 North 5th street, this city. I have stipulated at my sister's house, next door north, shall furnish steam heat and hot water for said house so long as you pay one-half the expense of running said furnaces and the said buildings remain on said lots.

"With love, I am yours respectfully."

There was also in the second envelope, which was unsealed, another envelope containing a quit-claim deed from Warren E. Lewis to Fannie L. Smith, together with a letter addressed to "Mrs. Fannie L. Smith." The papers contained in the last mentioned envelope were delivered after Little's death to the attorneys for Mrs. Fannie Little Smith and Mrs. Georgia Little Smith at the request of Mrs. Georgia Little Smith. The outside envelope, which is exhibit 1, bore the indorsement in Little's handwriting,

"P. E. Hatch from G. J. Little, Nov. 12/15." Also an indorsement in Hatch's handwriting: "Left by G. J. Little, 5/8/18, contents unknown.—No receipt." The unsealed envelope which was inside the first envelope bore the address, "Mr. Pascal E. Hatch, Secretary First Trust and Savings Bank, Springfield, Illinois," and the notation, "436-502 North 5th St." It also bore in Hatch's handwriting the memorandum, "$7000 fire insurance, Pascal E. Hatch, trustee.—Policies are with Franklin Ridgely and are payable to him as his interest may appear." Hatch never learned the contents of the package during Little's lifetime. He testified that he judged from the notation on exhibit 1 that it had been left with him on November 12, 1915, and afterward taken away by Little and again left on May 8, 1918. This was his inference from the notation. Little gave him no directions. As far as he was instructed he was merely holding it for Little. He also testified in regard to the deed that the name of the grantee, both in the body of the deed and the indorsements on the back, was in Little's handwriting; that an erasure had been made in both places where the name of the grantee appears. S. D. Scholes, a lawyer in Springfield, who had had business relations with Little for about twenty years, testified that Little told him about two years before his death that he had deeded some property on North Fifth street to Miss Selby and his sister, Mrs. Fannie Little Smith. This is all the competent evidence bearing upon the delivery of the deed under which the appellee claims title.

Little was married in 1872 and lived with his wife until her death, in 1915. He died on March 16, 1919, leaving no widow but leaving appellant his only heir, to whom by his will he devised all his property as trustee, and since his death she has continued in the exclusive possession of the property. Mrs. Fannie Little Smith is referred to in the evidence as his adopted sister. The appellee, Emily H. Selby, is not related to him either by blood or marriage.

She was born in 1859 and about 1880 went with her family to board at Little's, where she boarded until 1892, when she went to Chicago, where she has lived for many years. She is an osteopathic physician. She was offered as a witness, and over the objections of the appellant testified to receiving a letter in Little's handwriting enclosed in an envelope addressed to her at her office in Chicago, post-marked April 16, 1911, in which occurred the sentence, "Your papers are with P. E. Hatch, Sec'y First Trust and Savings Bank." She also testified that in the last talk she had with Little he told her that those papers were still with Hatch,—in case of his death to go to Hatch for them; that he had frequently said this before,—that the deed to this property was with Hatch. A codicil dated February 7, 1894, to a will executed by Little, the signature to which the appellee testified was in his handwriting, was introduced in evidence, directing the testator's executor to pay to appellee $5000 out of such life insurance on his life as might be collected by his executors. Little was continuously in possession of the property, renting, managing and controlling it until his death, after the execution of the deed by Lewis as before.

The testimony of the appellee was incompetent. The appellant defended as the devisee of Gershom J. Little, and the appellee was therefore prohibited by the statute from testifying to any fact occurring before his death, with the exceptions mentioned in the statute, none of which are applicable to her.

A delivery is necessary to the validity of a deed. The legal title to the property in controversy was in Warren E. Lewis, but the whole equitable interest was in Gershom J. Little. Lewis held the title merely as Little's agent or trustee, and Little had the right to control the title and require its conveyance to him if he desired. So far as appears there was no written declaration of the trust. But that was no obstacle to its enforcement,—at any rate so long as Lewis made no objections. He did, in accordance with Little's

direction, execute a deed to some third person and delivered it to Little, who was the sole beneficial owner of the property. The deed was not effectual to convey the title to the appellee by reason of its delivery to Little. The delivery of a deed to a third person as the grantor's agent, without any direction to deliver to the grantee, does not constitute a delivery. (*Lange* v. *Cullinan,* 205 Ill. 365; *Barrows* v. *Barrows,* 138 id. 649.) There is no evidence to indicate that Little was the agent of the appellee, and no competent evidence that she then, or at any other time during Little's life, had knowledge of the existence of the deed. A deed may be delivered to a stranger for the grantee although without authority, and the grantee may afterward ratify the delivery, but there was no delivery to Little for the grantee. He was the owner of the property, and Lewis in making the deed was simply acting as Little's agent. Lewis placed the deed in Little's possession, not as a delivery to the grantee but that Little might himself deliver the deed, if he desired, to whom and when and upon such terms as he chose. There is nothing to indicate that it was intended that the deed should take effect by a delivery to Little, and it is not claimed that it did do so. If that were so all the evidence in regard to the deposit with Hatch was useless. The case was tried upon the theory of a subsequent delivery by Little to the appellee. The evidence fails to show any such delivery. While no particular form is prescribed for the delivery of a deed, it is essential that the grantor shall indicate unequivocally, by words or deeds, or both, that he loses the control of the instrument for the purpose of investing the grantee with the title. A deed may be delivered in escrow to a person other than the grantee, to be delivered to the grantee upon the death of the grantor, and such a delivery will be sufficient to convey the title, but there must be an actual delivery and a loss of dominion and control by the grantor over the instrument. *Lange* v. *Cullinan, supra; Provart* v. *Harris,* 150

Ill. 40; *Dagley* v. *Black,* 197 id. 53; *Stevens* v. *Stevens,* 256 id. 140; *Hoyt* v. *Northup,* id. 604; *Mosier* v. *Osborn,* 284 id. 141; *Weber* v. *Brak,* 289 id. 564.

The fact that a deed was not in the possession of the grantee until after the grantor's death but was in the possession of a third person makes a *prima facie* case against the delivery of the deed even though the third person afterward delivered it to the grantee. If there was, in fact, a good delivery of the deed to the grantee because it had been delivered to the third person in escrow upon condition, it is incumbent upon the grantee to overcome the *prima facie* case against delivery by showing what the condition was and that it had been complied with. (*Scott* v. *Cornell,* 295 Ill. 508.) Where a deed has been delivered by the grantor to a depositary to be kept until the grantor's death and then delivered to the grantee, and the grantor's intention at the time is to part with all right to the custody or control of the deed and to have it take effect as a conveyance, this will constitute a good delivery which a subsequent change of intention on the part of the grantor will not affect. He will have no right to receive the deed from the custodian, and the custodian will have no right to surrender it to him but must hold it for the benefit of the grantee. (*Moore* v. *Downing,* 289 Ill. 612; *Deitz* v. *Deitz,* 295 id. 552.) The grantee has a right to have the deed remain in the possession of the custodian until the grantee becomes entitled to it, and while the deed is not operative to convey the title until the happening of the event upon which the grantee is to become entitled to the possession of the deed, when that event occurs the deed will convey the title, and the death in the meantime of neither the grantor nor the grantee will defeat the delivery. (*Hudson* v. *Hudson,* 287 Ill. 286.) In the case of *Sexton* v. *Merchants Loan and Trust Co.* 257 Ill. 551, Patrick J. Sexton, on the eve of his departure for Europe delivered to Rev. Hugh Smyth, a friend, a sealed package bearing an indorsement that it

should be opened only on Sexton's death but containing no instructions. Smyth knew nothing about the package or its contents. After Sexton's death, which occurred in a few weeks, the package was opened and found to contain a deed to Sexton's brother for certain property in Chicago, together with Sexton's will and various other deeds and papers. It was held that the giving of the package could not be regarded as a delivery of the deed because there were no instructions, express or implied, to deliver it to the grantee at any time. In this case the envelope containing the deed, together with the other papers enclosed, was not delivered to Hatch to be delivered to the grantee after the death of Little or upon the happening of any other event. The package was simply deposited, with no instructions and no authority to the depositary to deliver it to anyone or to open it or to do anything with it. He was not told what the contents were. He knew nothing about it. Little might have called for it at any time and Hatch would have rightfully returned it to him,—would have had no right to refuse to do so. In fact, he did return the package to Little if his inference from the indorsement on the package is correct that it had been delivered to him on November 12, 1915, and returned to him on May 8, 1918. Whatever may have been Little's intention in regard to the deed, it is manifest that he never did deliver it. He retained control of it until his death. He continued in possession of the property, receiving the rents and offering to sell it, and exercised dominion and control over it the same after the execution of the deed as before.

Since the appellee failed to show any title to the property it is unnecessary to consider the other questions raised by the appellant.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*