Argued October 29, 1956, affirmed April 17, petition for rehearing
denied June 5, 1957

MASQUART ET AL *v.* DICK, EXECUTOR ET AL

310 P. 2d 742

460

*Clarence D. Phillips* argued the cause for appellant Shriners' Hospitals for Crippled Children. On the briefs were Phillips, Coughlin, Buell & Phillips, Portland.

*Sam Van Vactor* argued the cause for appellant William G. Dick, Executor. On the brief were Dick & Dick and Brown & Van Vactor, The Dalles.

*Edwin J. Welsh,* Portland, argued the cause and filed a brief for respondents.

Before WARNER*, Chief Justice, and ROSSMAN, LUSK, PERRY** and McALLISTER, Justices.

LUSK, J.

This suit was commenced as a suit for the partition of real property, and developed into a controversy over the ownership of such property. The decree was for the plaintiffs and the defendants have appealed.

Plaintiffs are heirs at law of John Masquart, deceased. The defendants are the executor of the estate of Joseph A. Masquart, deceased, who was a brother of John Masquart, and Shriners' Hospitals for

---

* Chief Justice when this case was argued.
** Chief Justice when this opinion was rendered.

Crippled Children, a Colorado corporation, the beneficiary under Joseph's last will and testament.

Prior to January 14, 1943, the Masquart brothers, who had never married, held title as tenants in common to four parcels of land in Wasco County, Oregon, referred to in the record as Parcels A, B, C and E. On that day they executed reciprocal general warranty deeds to these lands, Joseph conveying his undivided one-half interest to John, and John conveying his one-half undivided interest to Joseph. Each of the deeds expressed a consideration of $1. They were acknowledged, but not witnessed. They were executed in the office of the late Frank G. Dick, a practicing attorney at The Dalles, and were left with Mr. Dick with oral instructions of the grantors to hold them until the death of one of the grantors, whereupon the deed to the survivor was to be placed of record. The record is not clear as to what was to be done with the other deed in those circumstances. Neither deed was to be recalled during the lifetime of the brothers without their mutual consent. The deeds were placed in an envelope by Mr. Dick and kept in the office safe until the death of John on January 13, 1950. In the meantime the brothers continued in the possession and control of the lands in the same manner as before the execution of the deeds, except as to Parcel E, which, on June 10, 1943, they conveyed to a third party.

John died intestate. Mr. Frank G. Dick predeceased him, and the evidence of the instructions which accompanied the deposit of the deeds was given by his son and law partner, William G. Dick, who had been informed of the transaction by his father, and after his father's death was advised by the Masquart brothers that his understanding of the instructions was correct.

After John's death William G. Dick caused his deed to be placed of record and destroyed the other deed. Joseph died on January 31, 1953, leaving a last will and testament executed on January 23, 1950, by which he devised and bequeathed all his property to the defendant Shriners' Hospitals for Crippled Children. In the meantime, however, on October 18, 1951, Joseph had conveyed Parcel C to a third party and used a portion of the proceeds received from this sale to purchase certain real property in Wasco County referred to in the record as Parcel D.

On January 6, 1954, the plaintiffs commenced this suit. Their contention is that at the time of his death John was the owner of an undivided one-half interest in Parcels A, B and C, and that they succeeded on his death to ownership of a 5/12 interest in the lands so designated while Joseph in like manner inherited from John a 1/12 interest. The defendants contend, on the other hand, that the deed from John to Joseph of January 10, 1943, operated as a present conveyance to Joseph of John's interest in the lands, and that on John's death Joseph came into the full enjoyment of that interest and was thereafter sole owner of all the lands involved. The defendants further contend, as alleged in their answers, that the brothers entered into an oral agreement whereby the first to die would leave all his property to the survivor, and that the survivor would at his death give, devise and bequeath all his property to the Shriners' Hospitals for Crippled Children, that the brothers executed the reciprocal deeds in January, 1943, and gave the instructions concerning them to effectuate this agreement, and that pursuant thereto Joseph made and executed his last will and testament, and "that pursuant to the agreement the said real property was constructively held and resulted

in a trust by the said John Masquart and Joseph Masquart for the use and benefit of the Shriners' Hospital for Crippled Children in Portland, Oregon   *   *   *."

The evidence of the alleged agreement that the property should ultimately be willed to the Shriners' Hospitals is concededly meager. It consisted of statements made by either one or both of the brothers to several witnesses. The witness Leta Richardson, a neighbor of John and Joseph, testified that one evening in 1945 in her living room John said to her, "Why do you work so hard?" and she said, " 'Well, why do you and Joe; you never go no place, you never do anything, what are you going to do with the money after you are dead?', and they said their money is all fixed, it goes to the Shrine Hospital." Other witnesses told of similar conversations after 1945, but there is no evidence that such an agreement was in existence prior to 1945.

William G. Dick testified that in 1950 he drew Joseph's will for him, and that on one occasion in the year 1952, after they had obtained quitclaim deeds from various people to a portion of Joseph's land, he suggested to Joseph that he might wish to leave to each of these people who had cooperated in giving these deeds a small sum of money, but that Joseph had responded

"adamantly and firmly in the negative on that proposition stating to me that he and John had an understanding, that they had agreed that the survivor would take all of their property and upon his death give it to the Shrine Hospital for Crippled Children in Portland and that was my first, my first firm knowledge of that agreement between them and as I now recall that is the only time that we got into it in detail."

On this subject it is said in the executor's brief:

"* * * Some time thereafter [i.e., after the deeds were deposited], probably in 1945 or 1946, John and Joseph Masquart orally modified the agreement by adding the requirement that the survivor would will all of his property to the Shriners' Hospital for Crippled Children in Portland, Oregon."

The first question is upon the effect to be given to the deed from John to Joseph. Was it testamentary in character and, therefore, inoperative because not executed in accordance with the statute of wills; or was it a present conveyance of an interest in land, to wit, the right in Joseph to succeed on the death of John to the full and complete ownership in fee of Joseph's interest in lands theretofore held by the brothers as tenants in common?

The law upon this subject was enunciated by Mr. Justice ROBERT S. BEAN, speaking for the court, in *Hoffmire v. Martin,* 29 Or 240, 242, 45 P 754, as follows:

"* * * The question as to when a deed, executed and deposited with a stranger to be delivered to the grantee upon the death of the grantor, is effectual to pass title, has been the subject of much judicial controversy, but it is now substantially agreed that its solution depends on whether the grantor intends to and does retain dominion and control over it after such delivery, or parts with the possession and control of it absolutely at the time of the delivery. In the former case, by the great weight of authority—although the decisions are not entirely harmonious—there is no sufficient delivery, and the deed passes nothing (citing cases). But if the grantor parts with all dominion and control over the deed, reserving no right to recall it or alter its provisions, it is a good delivery, and the grantee will, on the death of the grantor succeed to the title."

To the same effect see: *Jobse v. U. S. National Bank*, 142 Or 692, 21 P2d 221; *Norton v. Norton*, 105 Or 651, 209 P 1048; *Dieckman v. Jaeger*, 87 Or 392, 170 P 727; *Foulkes v. Sengstacken*, 83 Or 118, 130, 158 P 952, 163 P 311; *Thrush v. Thrush*, 63 Or 143, 125 P 267, 126 P 994; *Foote v. Lichty*, 60 Or 542, 120 P 398; *Reeder v. Reeder*, 50 Or 204, 210, 91 P 1075; *Payne v. Hallgarth*, 33 Or 430, 54 P 162. The Oregon decisions are in accord with those in most of the other states of the union. See 26 CJS 699, Deeds § 46; 4 Tiffany, Real Property (3d ed) 246, § 1054; 7 Thompson on Real Property (Perm ed) 582, § 4127; 2 Walsh, Commentaries on the Law of Real Property 472, § 214; III American Law of Real Property 318, § 12.67. In a few states it has been held that a reservation by the grantor of the right to recall the deed does not affect its validity if the right is not exercised during the lifetime of the grantor. 16 Am Jur 520, Deeds § 145. The Iowa court formerly so held, but overruled its prior decisions in *Orris v. Whipple*, 224 Ia 1157, 280 NW 617, 129 ALR 1.

The question whether a deed has been delivered is a "question of fact rather than of law, depending upon the intent of the grantor to vest an estate in the grantee." *Jobse v. U. S. National Bank*, supra, 142 Or at 696. And the weight of authority supports the proposition that "if the grantor would have a different effect given to his acts, he must at the time of putting the deeds in the possession of the stranger append thereto the condition affirmatively that on the demand of the grantor they should be returned to him. If nothing is said on that subject, the transaction will take the natural course of a conveyance." *Foote v. Lichty*, supra, 60 Or at 554. See, also, *Dieckman v. Jaeger*, supra, 87 Or at 397.

Whether a legal delivery of a deed has been accom-

plished is not a mere question whether the instrument has been physically placed in the possession of a grantee or of another for him. *Hood v. Nichol,* 236 Ky 779, 34 SW2d 429; *Chillemi v. Chillemi,* 197 Md 257, 78 A2d 750. It must be handed to him as the deed of the grantor, "or as an effective instrument between the parties." Devlin, op cit, 415, § 269, 418, § 271.

"The grantor's intent," it is said in *Bove's Executor v. Bove,* 116 Vt 76, 86, 70 A2d 562, "may be directed to delivery of the deed, from which the conclusion of law will follow that the property passed to the grantee; but it is evident that if the grantor intended to transfer present title to the property, he must have intended to deliver the deed, and that he could not have intended delivery if the property was not to pass immediately. Therefore, the inquiry is simplified by asking, did the grantor intend the property to pass?" The intention is to be gathered from the words, or acts, or both, of the maker of the instrument, and the surrounding circumstances. 26 CJS 675-676, Deeds § 41. But a mere intention which cannot be given effect without doing violence to accepted legal principles will not suffice. As was said in *Brown v. Brown,* 66 Me 316, 320:

"* * * But the intention of an owner of property in his attempted act of transferring it is not necessarily and always supreme. The law has prescribed certain plain rules to be observed in the execution of such important instruments as those by which the title to real property is transferred; and whatever courts may sometimes have done in their zeal to carry into effect the intention of parties, the law itself does not permit its salutary rules to be broken or bent to meet the exigencies of ignorance or negligence; deeming it better on the whole, that the intention of a party in disposing of his prop-

erty should occasionally fail, than that its important and firmly established rules made and applied for the benefit of all be overridden."

Of some analogy are cases involving deeds which upon their face state that the instrument shall only take effect after the death of the grantor. In *Sappingfield v. King,* 49 Or 102, 89 P 142, 90 P 150, 8 LRA (ns) 1066, a wife made a deed to her husband in consideration of love and affection and the sum of $1. The deed contained these words: "Have bargained and sold and by these presents do bargain, sell and convey unto my husband." Following the description of the property was this provision: "This deed is made with the full understanding and upon the condition that the same shall take effect from and after the death of the said grantor herein and it is understood and intended that this deed shall be recorded immediately after my death." As a part of the same transaction the husband executed a will leaving all of his property to his wife. Both the will and a deed were left with a custodian and so remained until the death of the husband. The court held that the deed conveyed no present interest, but was testamentary in character because of the provision that it should not take effect until after the death of the grantor. But in *Nalley v. First National Bank,* 135 Or 409, 293 P 721, 296 P 61, 76 ALR 625, an instrument which purported to assign, transfer, set over and convey to designated persons certain claims for money owned by the one executing the instrument, and which provided that it "shall not go into effect or be in force until after my death" was held, upon its delivery, to convey a present interest to the grantees. The instrument was construed "to constitute a reservation of a life estate in the grantor and not to be testamentary in its nature." *Sappingfield v. King,* supra, was said

to be out of harmony with the weight of authority. The effect of the decision was to overrule the Sappingfield case. In addition to the authorities cited in the Nalley opinion, see Tiffany, op cit, § 1074; Thompson, op cit, § 4125; and 26 CJS 698, Deeds § 45.

In this case the instructions given to the custodian of the deeds were not to deliver John's deed to Joseph on the death of the former, without more, but to do so only in the event that Joseph should survive John. The instructions were the same as to both deeds, and the transaction was obviously designed to carry out the brothers' common purpose that the survivor should succeed to the entire title to the lands. The event which was to determine who would ultimately acquire the title was not one that was certain to occur, such as the death of one of the brothers, but was wholly uncertain, namely, which one would survive the other. In those circumstances, under the great weight of authority, it is the law that no delivery of the deed takes place and the instrument is inoperative. *Rothney v. Rothney,* 41 Cal App2d 566, 107 P2d 294; *Miller v. Brode,* 186 Cal 409, 199 P 531; *Stone v. Daily,* 181 Cal 571, 185 P 665; *Long v. Ryan,* 166 Cal 442, 137 P 29; *Bury v. Young,* 98 Cal 446, 33 P 338; *Kenney v. Parks,* 125 Cal 146, 57 P 772; *Stanforth v. Bailey,* 344 Ill 38, 175 NE 784; *Weber v. Brak,* 289 Ill 564, 124 NE 654; *Weston v. Weston,* 164 Minn 384, 205 NW 434; *Atchison v. Atchison,* 198 Okla 98, 175 P2d 309; *Dunlap v. Marnell,* 95 Neb 535, 145 NW 1017; *Williams v. Schatz,* 42 Oh St 47; *Bove's Executor v. Bove,* supra; *Holohan v. Melville,* 41 Wash2d 380, 249 P2d 777; *Drinkwater v. Hoffeditz,* 157 Wash 305, 288 P 919; *Bloor v. Bloor,* 105 Wash 110, 177 P 722; *In re Edwall's Estate,* 75 Wash 391, 134 P 1041; *Ward v. Russell,* 121 Wis 77, 98 NW 939; 26 CJS 699, 702, Deeds § 46; 16 Am Jur

519, Deeds § 145; 7 Thompson on Real Property (Perm ed) 585, note 20; 1 Devlin on Deeds (3d ed) 419-420, § 271.*

This rule was applied in *Hood v. Nichol,* supra, where the deed was placed in the possession of the grantee, instead of a third party, with the understanding between the grantor and the grantee that the title was to pass only upon the contingency of the death of the grantor before that of the grantee; and in *Spicer v. Spicer,* 314 Ky 560, 236 SW2d 474, where the deed provided on its face that it was not to take effect until the death of the grantor, and, if the grantee should die before the death of the grantor, it should not take effect at all, the instrument was held inoperative. Other decisions to the same effect may be found cited in the annotations in 31 ALR2d 595 and 11 ALR 100. They hold that instruments containing such conditions are

---

* The majority rule is criticized in Tiffany, op cit, § 1054, and in 2 Walsh, op cit, 473, note 7. The note in Walsh cites cases in which, it is said, the courts held that "a deed delivered to a third person with directions to deliver it to the grantee if the grantor should die by a certain date or should not recover from his present illness, but if he should not die to return it" is void for non-delivery, though the grantor died and the deed was finally delivered to the grantee. The note proceeds: "The general rule is that the deed in such cases is legally delivered in escrow and if the grantor dies and final delivery is made as directed it takes effect as a conveyance of a future interest in the property which becomes absolute on his death." To this statement the following cases are cited: In re Cornelius' Estate, 151 Cal 550, 91 P 329; Dry v. Adams, 367 Ill 400, 11 NE2d 607; Moore v. Downing, 289 Ill 612, 124 NE 557; Selby v. Smith, 301 Ill 554, 134 NE 109; Wagner v. Kirchberg, 166 Mich 411, 131 NW 1114; Stonehill v. Hastings, 202 NY 115, 94 NE 1068. None of these cases supports the author's statement. They do not deal with the situation referred to, but are all cases in which a deed was deposited with a third party to be delivered to the grantee on the death of the grantor regardless of whether the grantee should survive the grantor, with the exception of Selby v. Smith, supra, which simply holds that where the deed was deposited with a third person without instructions to deliver it to the grantee, it was not valid because there was no valid delivery.

testamentary in character, for the reason, among others, that they leave unascertainable who is the grantee until the maker's death. *Tyson v. Hutchinson,* 164 Ga 661, 139 SE 519.

A leading decision is that of the California court in *Kenney v. Parks,* supra, where a husband and wife made reciprocal deeds, one to the other, of their respective separate properties and deposited them with a bank cashier with instructions to record the deed of the one first to die. The husband died, and the action arose out of the cashier's refusal to comply with the wife's demand to record his deed to her. The court said that the deeds were not escrows. "Where an instrument is deposited with a third party to await the performance of some condition by the grantee, such instrument becomes an escrow. Civ. Code, § 1057. The evidence here presents no such case. Upon the contrary, we have a direct grant or no deed whatever." Though not expressed, it was the plain implication of the agreement that upon the death of one of the parties the survivor should have his or her deed returned. "In other words," the court said, "the plaintiff having survived her husband, her deed is to be returned to her, and title to her property remain vested in her. Under the laws of this state, the title to the property vested presently when the deeds were delivered, or it did not vest at all. Yet, as to the plaintiff's property, it is apparent that no title ever vested in the husband under her deed. Such being the case as to her property, it is most difficult to see how title to his property, by his deed, ever vested in her." The court concluded that, in view of the right reserved by each of the parties to recall his or her own deed on the happening of the event named, "the respective grantors did not absolutely part with all future dominion and control over

them [the deeds], but, upon the contrary, the actual intention and understanding of each grantor was that upon the death of the other the survivor should take back his own deed, and that no title should vest under it."

Other cases involving reciprocal deeds executed with the understanding that the survivor should succeed to the title to all the property of the one first to die are *Bloor v. Bloor, Dunlap v. Marnell,* and *In re Edwall's Estate,* all supra. They were decided upon the same reasoning as that employed in *Kenney v. Parks.*

The defendants raise no question as to where the weight of authority lies. Indeed, the brief of the Shriners' Hospitals in support of its contention quotes extensively from American Jurisprudence passages which contain among other things the following statements of the law:

"It is well established that an effective legal delivery of a deed may be made by the grantor's manual delivery of the deed to a third person, with directions to the latter to hold the deed during the lifetime of the grantor and upon the latter's death to deliver it to the grantee, intending at the time of the delivery to the custodian to part *forever* with all right or power thereafter to repossess, retake, or control the deed." 16 Am Jur 517, Deeds § 143. (Italics added.)

"* * * Obviously, the grantor shows no intent to part forever with control of the deed where the understanding is that the custodian shall return the deed if the grantor should recover from a present illness or where he instructs the custodian to deliver the deed if he has made no other disposition of the property." Idem 519, § 144.

It is contended, however, that the defendants' position finds support in the decisions in the escrow cases.

While some authorities apply the term escrow to a transaction like that here under consideration (see 2 Walsh, op cit, 471, § 214), in this state, as in California and many other jurisdictions, an escrow presupposes the existence of a valid contract with sufficient parties, a proper subject matter, and a consideration. *Foulkes v. Sengstacken,* supra at 132; *Moore Mill & Lbr. v. Curry Co. Bk,* 200 Or 558, 566, 267 P2d 202.

The argument on behalf of the defendants is that in the ordinary case of a deed deposited in escrow the depositary is authorized to deliver the deed to the grantee upon the payment of the purchase price within the time fixed, a contingency not certain to occur; yet the courts hold that, if it does occur, the act of the depositary in handing over the deed to the grantee constitutes a valid delivery even though the grantor may by that time have died.

But in an escrow title does not pass at the time of delivery to the depositary, as it must if the deed is to be sustained in a case like the present. As clearly explained by Mr. Justice HARRIS in *Foulkes v. Sengstacken,* supra, there are two deliveries in the case of an escrow, and "the instrument deposited does not become a deed and operate to convey title until the second delivery or perhaps more accurately speaking, until the performance of the condition." If the maker of the deed dies before the time fixed for the second delivery "then a fiction is resorted to in order to prevent injustice by making the instrument the deed of the grantor from the first delivery." But in the case of a deed deposited with a third party, to be delivered to the grantee on the death of the grantor, there is but one delivery. Title passes at once "if the grantor at the time of delivery parted with control and dominion over the writing," and there is vested in the grantee

a fee in remainder though not in possession after the life estate of the grantor. *Foulkes v. Sengstacken,* supra, 83 Or 128-130. Thus, in the case of an escrow a present intention to accomplish a legal delivery of a deed, with a resulting present transfer of interest in the property, is not a requisite for enforcement of a valid contract underlying the transaction, even though the grantor may have died before the time for performance by the grantee.

The case of *Jackson v. Jackson,* 67 Or 44, 135 P 201, Ann Cas 1915C 373, cited by defendants, is not in point. The deed there was not to be delivered to the grantee until 90 days after the death of the grantor and until the grantee paid certain sums to persons named. In the Foulkes case, 83 Or at 131, we approved the following comment on this decision in the annotation appended to it in Ann Cas 1915C 373:

> "The deposit of a deed to be delivered on the performance of a condition after the death of the grantor stands on the same footing as a deposit for delivery unconditionally after the grantor's death."

We hold that the deeds in question were never validly delivered, and that Joseph Masquart acquired no right or title in John Masquart's undivided interest in the lands involved as the result of the deposit and subsequent recordation of the latter's deed.

We come now to consider the alleged oral agreement that the first of the brothers to die would "leave all of his property to the survivor," and that the survivor would will all of his property to the Shriners' Hospitals.

Such an agreement is within the statute of frauds (*Majovski v. Slavoff,* 188 Or 357, 215 P2d 674, and

Oregon cases there cited) and unenforceable unless the bar of the statute has been removed by part performance. If an oral agreement is made to leave one's property by will to another in consideration of services to be performed by the other, and the rendition of the services is wholly referable to the contract, and the services are of such a character as not to be estimable or compensable by any pecuniary standard a court of equity may enforce it. *Tiggelbeck v. Russell,* 187 Or 554, 213 P2d 156. Again, "if two parties verbally agree, each in consideration of the other doing likewise, to make their wills disposing of their property in a specified manner and one dies leaving a will which complies with the contract and the survivor accepts benefits under the will, non-compliance with the agreement by the survivor would operate as a fraud which a court of equity will prevent. In such case the acts done by the other in compliance with the agreement is such a part performance as would take the case out of the statute of frauds and equity will compel the fulfillment of the contract." *Schramm v. Burkhart,* 137 Or 208, 215, 2 P2d 14. The instant case does not fall within the rules of either of the cases cited. There was no agreement for services of any kind, and Joseph Masquart received no benefits under the deed of his brother John. Neither was he guilty of any fraud, constructive or otherwise.

■ The contention of the defendants that the transaction resulted in a joint tenancy with right of survivorship cannot be sustained. *Erickson v. Erickson,* 167 Or 1, 115 P2d 172, is not authority for their position. We there held that a deed to two persons, which expressly provides that the grantees "do not take the title in common but with the right of survivorship; that is, that the fee shall vest in the survivor of the

grantees" will be given the effect intended by the grantor. The principal question decided was that the statute abolishing joint tenancies did not forbid carrying out the intention of the grantor as thus expressed in writing. The joint bank account cases on which the defendants rely are analogous to the Erickson case, though they present the additional element of a written contract signed by the joint depositors. In such cases the contract, together with the deposit of funds in the bank, results in the creation of a joint tenancy in personal property with right of survivorship. But those cases, like the Erickson case, differ from the one at bar not only in the fact that the contract is in writing but also because a present interest in the subject matter is vested in the parties at the time the contract is executed. See *Langoe v. Giannini,* 186 Or 207, 206 P2d 106; *State v. Gralewski's Estate,* 176 Or 448, 159 P2d 211, 161 ALR 66; *Holbrook v. Hendricks' Estate,* 175 Or 159, 152 P2d 573; *Beach v. Holland,* 172 Or 396, 142 P2d 990, 149 ALR 866; *In re Edwards' Estate,* 140 Or 431, 14 P2d 274. These decisions may be compared with *Duemer v. Duemer,* 86 Oh App 192, 88 NE2d 603, cited by the defendants, which is illustrative of holdings in numerous jurisdictions to the effect that a contract in writing, based upon a consideration which invests the promisee *in praesenti* with an irrevocable contractual interest in property, is not testamentary in character merely because of a provision naming the death of the promisor as the time for the transfer of the legal title to the property. See the annotation in 1 ALR2d 1178, and in particular pp 1183 and 1207. As the court said in *Estate of Howe,* 31 Cal2d 395, 397-398, 189 P2d 5, 1 ALR2d 1171, to which the annotation referred to is appended, "an instrument which does not pass any interest until after the death of the maker

is essentially a will. * * * But not every instrument which provides for performance at or after death is testamentary in character. If the instrument creates a right in the promisee before the death of the testator, it is a contract.''

It should be observed in passing that the editors of the annotation say ''there is important authority to the contrary'' of *Duemer v. Duemer* and like cases. 1 ALR2d 1208, 1212.

The case of *Foulkes v. Sengstacken,* supra, was decided upon a principle which, we think, has application here. In that case there was an oral agreement to convey land. An instrument drawn as a warranty deed was put in the hands of a third party with instructions to deliver it to the grantee named therein when the agreed consideration should be fully paid. The grantor died, and, after her death, the grantee completed the payments and the deed was delivered to him by the custodian. The court held that, while parol evidence was admissible to prove the directions to the party holding the deed, this was not true respecting the agreement to buy and sell which must be in writing. The deed itself did not satisfy the statute of frauds because it did not contain all the terms of the oral agreement, and, as the grantee made no improvements upon the land and did nothing prior to the death of the grantor except to pay the taxes and part of the purchase price, the bar of the statute was not removed. The attempted delivery of the deed by the custodian was of no effect. The court said:

''Since there was no valid, binding and enforceable agreement to sell the land and not a sufficient part performance to avoid the statute of frauds it follows that there was no technical escrow; and, therefore, the delivery of the instrument, in the

form of a deed, to Hall [the custodian] was in contemplation of law merely the voluntary act of Elizabeth Williams and amounted to nothing more than a continuing offer which necessarily terminated with the death of the offerer. The death of Elizabeth Williams at once produced the death of the writing held by Hall and no subsequent act of Sengstacken could resurrect the writing and make it a living deed (citing cases)." 83 Or at 134.

Considered in the aspect of the oral agreement, the deposit of John's deed likens itself to an escrow. As in the Sengstacken case, the death of John "produced the death of the writing" held by Mr. Dick. There was no part performance, and delivery of the deed to Joseph, under those circumstances, did not constitute an executed contract.

The argument of the defendants in support of enforceability of the oral agreement is effectively answered in the well-considered opinion of Donworth, J., in *Holohan v. Melville,* supra. The case is relied on heavily by the defendants, but, when carefully analyzed, it will be seen that their reliance is misplaced. So far as pertinent here, two questions were decided. First, that an instrument in form a deed, deposited with a stranger with instructions to deliver it to the grantee if she should survive the maker of the instrument, never takes effect as a deed for the same reasons that we have given for our holding upon that point; and, second, that an oral agreement by tenants in common that on the death of one the survivor shall take the entire interest in the lands so held is testamentary and void.

The facts were as follows. Two unmarried women, who were close personal friends, purchased together three tracts of land. The decision as to two of the

tracts, one of them referred to as the Seattle property, the other as the Ocean property, is all that is important at the moment. The women agreed orally that on the death of one of them the survivor should succeed to the ownership of the other's interest, and to carry out this purpose one of them, Myrtle Jane Reck, executed the two quitclaim deeds, conveying her interest in the two tracts to the other, Grace Melville, who in turn executed a will devising all real estate standing in her name to Miss Reck. These instruments were deposited with an attorney with instructions that on the death of one of the women he should deliver them to the survivor. Miss Reck died, and a controversy followed between her heirs and Miss Melville concerning the title to an undivided interest in each of the tracts of land. The court held that, notwithstanding the Washington statute which abolished the right of survivorship in an estate held in joint tenancy, a right of survivorship can be created by deed where the intention to do so is manifested (citing, inter alia, *Erickson v. Erickson,* supra), and further, that, where the grantees have agreed among themselves to hold the property as joint tenants with right of survivorship (even though there was no such intention on the part of the grantor), the agreement will be given effect. "Evidence of an agreement between the parties that they shall *acquire* the property as joint tenants" (italics added) should be "equally as competent as the words of the deed itself to establish the intention necessary to rebut the presumption that they took as tenants in common." But, for reasons now to be stated, the agreement was held valid as to one of the tracts, but invalid as to the other. The evidence showed that the Seattle property was acquired after the survivorship agreement went into effect. Therefore, it was held that the women ac-

quired this property as joint tenants, each owning "an undivided moiety of the whole," and, since Miss Melville's interest in the Seattle property was in the whole thereof, nothing passed to her upon the death of Miss Reck and the statute of wills was not contravened. But there was no evidence that the survivorship agreement was in effect at the time title was acquired to the Ocean property, and the two women were, therefore, tenants in common of that tract. "Since, as tenants in common, each owned a separate estate: to wit an undivided one-half interest in the Ocean property, the survivorship agreement was merely an abortive attempt to pass property at death."

Applying the rule in that case to the case in hand, it is undisputed here that the Masquart brothers were tenants in common of all the lands involved at the time they went to Mr. Dick's office, told him of their agreement, and executed the deeds. As we have held, the deeds themselves were not delivered and never became operative. The brothers were tenants in common after the deeds were executed, as before. We have nothing, therefore, but an oral agreement that the survivor should take all, and this, as the Washington court correctly held, "was merely an abortive attempt to pass property at death."

*Stonewall v. Danielson,* 204 Ia 1367, 217 NW 456, and *Neneman v. Rickley,* 110 Neb 446, 194 NW 447, cited by the defendants, appear to come within the ruling of the Holohan case respecting an agreement (in the former case oral, in the latter written) that property to be thereafter acquired shall be held by the parties to the agreement as joint tenants with right of survivorship. As we are not dealing with a situation of that kind, we need express no opinion about that feature of the decision of the Holohan case.

Under facts similar to those in the case at bar—cross deeds by husband and wife of their separate properties—it was held in *Dunlap v. Marnell,* supra, that the surviving grantee, the husband, took nothing by the deed, but that the oral contract in favor of the survivor was valid and enforceable. The court appears not to have considered such questions as the effect of the statute of frauds and the testamentary character of the agreement, and to have based its decision on its duty "to do complete equity between the parties." The court said that "since the intention of the grantor was to vest the full legal title in the grantee at her death, the recording of the deed by Frenzer [the custodian] after her decease operated to carry out and perfect that intention." No authorities were cited. We are unable to follow this decision. The court first held that the deed to the survivor had never been delivered and was inoperative on the authority of *Kenney v. Parks,* supra, and other like cases. The effect of its decision, therefore, as it seems to us, was to give all the potency of a will to a void deed and the grantor's intention. The question before us was, in our opinion, correctly decided in the Holohan case.

As to the claim that the lands were held in trust for Shriners' Hospitals little need be said. In view of our disposition of the other questions in the case it would seem to be obvious that, since Joseph Masquart never acquired any title, legal or equitable, to John's interest, he could not have been a trustee of that interest. In the answer of Shriners' Hospitals it was alleged that, pursuant to said agreement, "the said real property was constructively held and resulted in a trust by the said John Masquart and Joseph Masquart," etc. But the creation of a trust must be contemporaneous with the execution of a conveyance

(*Fellman v. Fellman,* 80 Or 169, 175, 156 P 792), but of this there is no evidence. It is admitted in the executor's brief, from which we quoted in our statement of the facts, that the oral agreement to leave the property to Shriners' Hospitals was not made until long after the deeds were exchanged. Such an agreement in those circumstances was *nudum pactum.* Joseph apparently considered it a binding moral obligation, but it was no more than that.

We are unable to agree with the contention of the executor that John became a trustee for Joseph under the rule of the Restatement, Restitution § 164, reading as follows:

> "Where the owner of the property makes a gratuitous conveyance of it and the conveyance is ineffective to transfer the property, the donor holds the property upon a constructive trust for the intended donee, if
>
> \* \* \* \* \*
>
> "(b) the donor has died believing that he has made an effective conveyance, and the intended donee was a natural object of his bounty, and it is not inequitable to permit him to have the property."

The rule applies only, in our opinion, when there is a present intention to pass title and the gift fails because, for example, of some defect in the instrument of conveyance. See illustration at p 668 of the volume of the Restatement cited. It does not apply to an ineffectual attempt to make a testamentary disposition of property. To hold otherwise would be to throw into confusion the entire law with respect to invalidly executed wills.

We are of the opinion that the evidence fails to disclose the establishment of a trust either express, resulting or constructive.

As stated at the outset, this is a partition suit, although the principal controversy is over the ownership of the property involved. The decree of partition affects only the lands owned by Joseph at the time of his death and which were owned by the brothers during their joint lives. It, therefore, does not affect the parcel which the brothers conveyed after the exchange of reciprocal deeds and before John's death or the parcel conveyed after John's death. The court found that physical partition could not be made without prejudice to the several owners, and ordered the premises sold under the direction of a referee. The decree also provides for an accounting. These various provisions of the decree are not challenged save for the reasons already discussed. An assignment of error, directed to the court's denial of a motion of the defendant Shriners' Hospitals to strike portions of the complaint and to make the complaint definite and certain, has been considered and found to be without merit. The suggestion in the brief of the defendant Shriners' Hospitals that there is a defect of parties defendant can hardly be said to arise upon the record; in any event, it offers no reason for disturbing the decree.

This controversy, like that in *Foulkes v. Sengstacken,* supra, ''presents some features which naturally appeal to the sympathy of a chancellor.'' But, as the court said in that case, '' 'hard cases are the quicksands of the law.' In the long run it is better to follow the law and avoid the quicksands.''

None of the parties will be allowed costs or disbursements on this appeal.

The decree is affirmed and the cause remanded for further proceedings pursuant to the interlocutory decree.